STATE of Minnesota, Respondent,

v.

Sixto Esteban LANZ–TERRY,
Petitioner, Appellant.

No. CX–94–2.

Supreme Court of Minnesota.

Aug. 4, 1995.

John M. Stuart, State Public Defender, Melissa Sheridan, Asst. State Public Defender, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Susan Gaertner, Ramsey County Atty., Darrell C. Hill, Asst. County Atty., St. Paul, for respondent.

OPINION

ANDERSON, Justice.

This appeal relates to the state's charge that defendant, Sixto Esteban Lanz–Terry, shot a gun at Lazaro Borrero and wrongfully took from Borrero's companion, Dianna Rodriguez, the keys to Borrero's car. No one was injured during the shooting incident, which occurred on May 13, 1993, outside of an apartment building located in St. Paul, Minnesota. In a three-count complaint, Lanz–Terry was charged with: second-degree assault; attempted aggravated robbery; and aggravated robbery.

At trial, Lanz–Terry asserted that he had not shot at Borrero; instead, Lanz–Terry claimed, it was Borrero who shot at him. To support his version of the incident, Lanz–Terry sought to impeach the credibility of the state's two key witnesses, Borrero and Rogriguez, by revealing, through cross-examination, their potential bias against him. But the trial court restricted the scope of Lanz–Terry's cross-examination.

A Ramsey County District Court jury convicted Lanz–Terry of second-degree assault for shooting a gun at Borrero, and of simple robbery for wrongfully taking Borrero's car keys from Rodriguez. Lanz–Terry appealed from the judgment of conviction to the Minnesota Court of Appeals, claiming that the trial court unduly restricted his cross-examination of Borrero and Rodriguez. By restricting his right to cross-examine Borrero and Rodriguez, Lanz–Terry contended, the trial court prevented him from developing his defense and, thereby, violated both his due process rights under the Fourteenth Amendment and his right to confront witnesses under the Sixth Amendment. In an unpublished decision, the court of appeals affirmed Lanz–Terry's convictions. Lanz–Terry appeals to this court, renewing his contentions. We affirm.

In its case against Lanz–Terry, the state presented the testimony of Lazaro Borrero,

the alleged assault victim, and the testimony of Dianna Rodriguez, the alleged robbery victim, who had been with Borrero at the time of the shooting incident. Borrero testified that he and Lanz–Terry had been friends since 1982, but for various reasons, their relationship had recently become acrimonious. Borrero and Rodriguez both testified that, on May 13, 1993, Lanz–Terry shot a gun at Borrero and wrongfully took from Rodriguez the keys to Borrero's car. The state also presented the testimony of the police officer who took the initial report of the shooting incident and the testimony of three witnesses who had heard the gun shot and had observed the scene of the incident shortly after the shot had been fired. The state's witnesses all testified that Lanz–Terry was accompanied by three companions at the time of the shooting incident, but none of these companions testified at trial.

To support his contention that he had not shot at Borrero and that, instead, Borrero had shot at him, Lanz–Terry sought to impeach the credibility of Borrero by introducing evidence that Borrero had five prior felony convictions. The five convictions that Lanz–Terry sought to admit included: a 1983 conviction for robbery; a 1984 conviction for possession of cocaine; a 1987 conviction for theft from a person; a 1993 conviction for sale of a controlled substance; and a 1993 conviction for possession of a pistol by a felon. During a pretrial hearing, the state argued to exclude evidence of Borrero's prior convictions, maintaining, "[T]hese convictions have the potential to prejudice Mr. Borrero in the jury's eye. They may see him as a person not capable of being a victim in this particular instance."

The trial court agreed. The court had already precluded the state from admitting evidence of Lanz–Terry's prior convictions, either as *Spreigl*[1] evidence or as impeachment evidence, because the court concluded that admission of such evidence would be too prejudicial. The court proclaimed that the same prejudicial effect analysis that supported its decision to exclude evidence of Lanz–Terry's prior convictions also supported the decision to exclude evidence of Borrero's prior convictions. Thus, the court ruled that evidence of Borrero's prior convictions was inadmissible and prohibited defense counsel from questioning Borrero about his convictions during cross-examination.

Beyond questioning Borrero about his convictions, Lanz–Terry sought to cross-examine Borrero about an incident of collateral misconduct that occurred on May 9, 1993, four days before the shooting incident giving rise to the present case. On that date, during a confrontation with Lanz–Terry, Borrero allegedly moved his shirt with his hand to reveal a gun tucked into the waistband of his pants, and thereby threatened Lanz–Terry by implication. Concluding that this May 9, 1993 incident was admissible to show "a relationship between the parties," the trial court allowed Lanz–Terry to testify about this alleged incident and allowed defense counsel to question Borrero about it during cross-examination.

Lanz–Terry further sought to cross-examine Borrero about his involvement in four other incidents of collateral misconduct, each of which occurred after the May 13, 1993 date of the shooting incident giving rise to the present case. If Borrero denied involvement in any of these incidents, defense counsel further sought to admit extrinsic evidence that these incidents had actually occurred. Defense counsel's offer of proof relating to these four incidents revealed:

1. that on May 20, 1993, Lanz–Terry reported to a St. Paul police officer that Borrero had shot at him while Lanz–Terry stood outside of a bus station in downtown St. Paul;

2. that on May 21, 1993, Borrero was arrested for possession of narcotics, and at the time of his arrest, he possessed a gun that he admitted belonged to him;

3. that on July 24, 1993, Borrero wrote a letter to the county attorney victim-witness advocate, accusing Lanz–Terry of setting him up to be arrested for possession of narcotics; and

---

1. *State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965).

4. that on July 27, 1993, Borrero reportedly assaulted Lanz–Terry while both of them were in the Ramsey County Adult Detention Center.

Defense counsel sought to admit this evidence to expose Borrero's bias or motive to fabricate the charge against Lanz–Terry and to favor the prosecution during his testimony. The trial court ruled that none of these incidents of collateral misconduct were admissible.

During cross-examination of Dianna Rodriguez, who had been with Borrero at the time of the shooting incident, defense counsel elicited that Rodriguez and Borrero were good friends and had been friends for 13 years.[2] Rodriguez admitted that she spent a lot of time with Borrero. Cross-examination of both Rodriguez and Borrero revealed that Rodriguez and Borrero had stayed together in a motel during the first few days following the shooting incident. To impeach Rodriguez's assertion that she and Borrero were not intimately involved, defense counsel sought to use a transcript of Borrero's testimony taken in a separate matter, in which Borrero stated that Rodriguez had been pregnant with his child, but had lost the child. The court precluded defense counsel from impeaching Rodriguez in that manner, finding the prejudicial effect of such impeachment outweighed its probative value and finding such information to be "irrelevant for the purposes of this criminal litigation."

The jury convicted Lanz–Terry of second-degree assault and of simple robbery, and acquitted him of aggravated robbery and attempted aggravated robbery. Lanz–Terry was adjudged guilty of second-degree assault and simple robbery, and he was sentenced to concurrent terms of 60 months for the second-degree assault conviction and 46 months for the simple robbery.

### I.

■ We first address whether the trial court violated Lanz–Terry's right to confront witnesses under the Sixth Amendment by precluding him from questioning Borrero about Borrero's five prior felony convictions. Defense counsel sought to admit this evidence to impeach Borrero's credibility as a witness. Borrero's convictions did not involve "dishonesty or false statement" and, therefore, the trial court possessed the discretion to restrict the use of the prior convictions. *See* Minn.R.Evid. 609(a)(2).

■ The scope of cross-examination is always subject to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation. *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). When evaluating whether to admit a prior conviction of the defendant or a defense witness, the major concern is to protect the defendant from unfair prejudice. *See State v. Frisinger,* 484 N.W.2d 27, 31 (Minn.1992) (explaining that unfair prejudice means the evidence has an undue tendency to suggest decision-making on an improper basis). In contrast, when evaluating whether to admit a prior conviction of a prosecution witness, the major concerns are to protect the witness from being harassed and unduly embarrassed, the jury from being confused and misled, and everyone involved (court, jury, parties) from having to endure an unnecessarily prolonged trial. 3 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 265 at 173 (2d ed. 1994); *see also State v. Hamilton,* 289 N.W.2d 470, 475 (Minn.1979). Based on concerns about such things as harassment, decision making on an improper basis, confusion of the issues, and cross-examination that is repetitive or only marginally relevant, the trial court possesses wide latitude to impose reasonable limits on cross-examination of a prosecution witness. *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986).

The type and number of Borrero's convictions might have lead the jury to "see him as a person not capable of being a victim in this particular instance." In other words, the convictions might have led the jury to conclude that Borrero was a bad person who deserved to be the victim of a crime, which would amount to a decision being made on an improper basis. In addition, admitting evi-

---

**2.** Borrero also testified that he and Rodriguez had been friends for 13 years.

dence of Borrero's convictions would likely have confused the jury and unnecessarily prolonged the trial.

■ Nevertheless, the discretionary authority of the judge to control the scope of cross-examination is limited by the Sixth Amendment. "The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'" *Davis v. Alaska,* 415 U.S. at 315, 94 S.Ct. at 1110; *Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 1067–68, 13 L.Ed.2d 923 (1965); *State v. Pride,* 528 N.W.2d 862, 865 (Minn. 1995) (plurality opinion). "'The main and essential purpose of confrontation is *to secure for the [defendant] the opportunity of cross-examination.'"* *Davis v. Alaska,* 415 U.S. at 315–16, 94 S.Ct. at 1110 (quoting 5 J. Wigmore, *Evidence* § 1395, at 123 (3d ed. 1940)); *State v. Pride,* 528 N.W.2d at 865 (plurality opinion).

■ In criminal cases, the Confrontation Clause contemplates a cross-examination of the witness in which the defendant has the opportunity to reveal a prototypical form of bias on the part of the witness. As this court recently relayed:

"[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors * * * could appropriately draw inferences relating to the reliability of the witness.'" *Delaware v. Van Arsdall,* 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986) (quoting *Davis v. Alaska,* 415 U.S. at 318, 94 S.Ct. at 1111).

*State v. Pride,* 528 N.W.2d at 866 (plurality opinion).

■ "Bias is a catchall term describing attitudes, feelings, or emotions of a witness that might affect her testimony, leading her to be more or less favorable to the position of a party for reasons other than the merits." Mueller & Kirkpatrick, *supra,* § 307 at 389. Evidence of bias may properly show hatred or enmity between a witness and a party. *United States v. Abel,* 469 U.S. 45, 52, 105 S.Ct. 465, 469, 83 L.Ed.2d 450 (1984). The partiality or bias of a witness is "'always relevant as discrediting the witness and affecting the weight of his testimony.'" *Davis v. Alaska,* 415 U.S. at 316, 94 S.Ct. at 1110 (quoting 3A J. Wigmore, *Evidence* § 940, at 775 (Chadbourn rev. 1970)). Moreover, extrinsic evidence of nonconviction misconduct may be admitted to show that a witness is motivated by bias, interest, or influence. *United States v. Abel,* 469 U.S. 45, 55, 105 S.Ct. 465, 470–71, 83 L.Ed.2d 450 (1984).

■ But not everything tends to show bias, and courts may exclude evidence that is only marginally useful for this purpose. The evidence must not be so attenuated as to be unconvincing because then the evidence is prejudicial and fails to support the argument of the party invoking the bias impeachment method. Mueller & Kirkpatrick, *supra,* § 268 at 188–89; *cf. State v. Pride,* 528 N.W.2d at 868 (Tomljanovich, J. dissenting). In determining whether a restriction of cross-examination violates the defendant's right to confront witnesses, a distinction must be made between general credibility attacks and attacks on a witness's testimony designed to reveal bias. As the Supreme Court of the United States has explained,

[T]he cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness. One way of discrediting the witness is to introduce evidence of a prior criminal conviction of that witness. * * * The introduction of evidence of a prior crime is thus a general attack on the credibility of the witness. A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand.

*Davis v. Alaska,* 415 U.S. at 316, 94 S.Ct. at 1110.

None of Borrero's prior convictions would have revealed a prototypical form of bias; instead, Borrero's convictions are relevant only for general credibility impeachment. Furthermore, the nature of the convictions

made them only marginally useful in attacking the credibility of Borrero. Finally, admission of such evidence would have potentially led the jury to decide the case on an improper basis, and would likely have confused the jury and unnecessarily prolonged the trial. For these reasons, we conclude that the exclusion of Borrero's prior convictions was not an abuse of discretion and did not violate Lanz–Terry's Sixth Amendment confrontation rights.

## II.

■ We next address whether the trial court violated Lanz–Terry's right to confront witnesses under the Sixth Amendment by precluding him from questioning Borrero about his involvement in four specific incidents of collateral misconduct. Each of these incidents occurred after the May 13, 1993 date of the shooting incident giving rise to the present case. Defense counsel sought to admit this evidence to impeach Borrero by exposing his bias or motive to fabricate the charge against Lanz–Terry and favor the prosecution during his testimony. The trial court ruled that evidence relating to these incidents was irrelevant and inadmissible, and prohibited defense counsel from commenting on them during cross-examination of Borrero.

■ As stated earlier, the defendant has a constitutional right to be allowed to cross-examine the state's witnesses to reveal a prototypical form of bias. Whether the trial court abused its discretion in restricting a defendant's attempted cross-examination that is aimed at showing bias turns on whether the jury has sufficient other information to make a "discriminating appraisal" of the witness's bias or motive to fabricate. *United States v. Hinton,* 683 F.2d 195, 200 (7th Cir.1982), *aff'd,* 465 U.S. 482, 104 S.Ct. 1172, 79 L.Ed.2d 458 (1984); *United States v. Harvey,* 547 F.2d 720, 723 (2d. Cir.1976). Beyond that threshold, the extent to which extraneous matters are permitted into a criminal case, either to show the existence or nonexistence of a material fact or to affect the credibility of a witness as to such fact, rests largely in the discretion of the trial court. *Hamling v. United States,* 418 U.S.

87, 127, 94 S.Ct. 2887, 2912–13, 41 L.Ed.2d 590 (1974) (instructing that trial courts have considerable latitude to reject cumulative evidence); *see also State v. Schilling,* 270 N.W.2d 769, 772–73 (Minn.1978); *State v. Brown,* 185 Minn. 446, 448, 241 N.W. 591, 592 (1932). Courts may exclude evidence of extraneous matters based on concerns about such things as harassment, decision making on an improper basis, confusion of the issues, and cross-examination that is repetitive or only marginally relevant. *Delaware v. Van Arsdall,* 475 U.S. at 679, 106 S.Ct. at 1435.

In the present case, the jury knew that Borrero had allegedly threatened Lanz–Terry with a gun one week before the May 13, 1993 offense date. The jury knew that Borrero and Lanz–Terry had been friends since 1982, but that Borrero had recently developed an enmity toward Lanz–Terry. These two items of information indicate that Borrero may have possessed a bias against Lanz–Terry independent of the bias that one would reasonably expect the victim of a crime to harbor against the defendant. Each of the four incidents of Borrero's collateral misconduct that Lanz–Terry sought to admit occurred after the May 13, 1993 shooting incident and after Borrero had reported the incident to the police. Thus, those incidents would not have affected Borrero's decision to report the shooting incident. *Cf. State v. Pride,* 528 N.W.2d at 866 (plurality opinion) (appraising the witness' motive to fabricate charges against the defendant). To the extent that Borrero was motivated to falsely report an incident to the police, the jury possessed sufficient information about Borrero's potential bias to allow it to make a discriminating appraisal of his testimony.

■ But evidence of a witness's bias or motive to fabricate is relevant beyond the time of the initial charge. *See State v. Goar,* 311 Minn. 560, 561, 249 N.W.2d 894, 895 (1977) (noting that "possible bias on the witness' part * * * is relevant to the witness' state of mind when testifying"). Of the four incidents of Borrero's collateral misconduct that Lanz–Terry sought to admit, the July 24, 1994 letter from Borrero to the county attorney victim-witness advocate would have further revealed that Borrero possessed a bias against Lanz–Terry. If the jury had

known of the July 24, 1993 letter, the jury's understanding of the magnitude of Borrero's bias likely would have been enhanced.

Notwithstanding his potential bias, Borrero's testimony at trial was substantially consistent with the initial police report as revealed by the testimony of the police officer who wrote the report. Although the argument that Borrero testified consistently relates more to the weight to be given to the evidence as opposed to its admissibility, we conclude that the jury possessed information sufficient to allow it to make a discriminating appraisal of Borrero's testimony. Accordingly, we conclude that the trial court did not abuse its discretion and did not violate Lanz–Terry's Sixth Amendment confrontation rights when it precluded defense counsel from inquiring into these instances of misconduct during his cross-examination of Borrero. We also conclude that the trial court did not violate Lanz–Terry's asserted right to present a defense. Lanz–Terry testified on his own behalf and was able to effectively cross-examine the state's witnesses by emphasizing inconsistencies, revealing poor observation skills, and exposing potential bias.

### III.

■■■■ Finally, we address whether the trial court violated Lanz–Terry's right to confront witnesses under the Sixth Amendment by precluding defense counsel from impeaching Dianna Rodriguez with a transcript of Borrero's testimony taken in a separate matter. It is important to permit the defendant to show the relationship between the alleged victim of the crime and a witness whose testimony is given to corroborate the victim's version. *State v. Elijah,* 206 Minn. 619, 623, 289 N.W. 575, 578 (1940). In the present case, defense counsel elicited that Rodriguez and Borrero were good friends and had been friends for 13 years. Cross-examination of both Borrero and Rodriguez revealed that Rodriguez and Borrero had stayed together in a motel during the first few days following the shooting incident. The jury was aware that Rodriguez was one of the alleged victims of Lanz–Terry, and the jury possessed sufficient information to be aware that Rodriguez was not a totally disinterested witness. Because the jury had sufficient other information to make a "discrimi-

nating appraisal" of Rodriguez's bias or motive to fabricate, we conclude that the trial court did not abuse its discretion in prohibiting Lanz–Terry's attempted cross-examination aimed at showing Rodriguez's bias. *See United States v. Hinton,* 683 F.2d at 200; *United States v. Harvey,* 547 F.2d at 723; *see also State v. Schilling,* 270 N.W.2d 769 (Minn.1978) (upholding the exclusion of juvenile adjudications against Sixth Amendment attack in part because such evidence would have been cumulative at most).

In addition, we note that "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in *otherwise appropriate* cross-examination designed to show a prototypical form of bias on the part of the witness." *Delaware v. Van Arsdall,* 475 U.S. at 680, 106 S.Ct. at 1436 (emphasis added). Lanz–Terry sought to cross-examine Rodriguez using Borrero's prior sworn statement. Borrero's prior sworn statement constitutes hearsay because it impeaches Rodriguez only if the jury believes the truth of the matter asserted. *See* Minn.R.Evid. 801(c). Lanz–Terry potentially could have offered the statement against Borrero, but Lanz–Terry did not take that approach. *See, e.g.,* Minn. R.Evid. 613; *cf. State v. Hawkins,* 260 N.W.2d 150 (Minn.1977) (stating that "[w]here it is the theory of the defense that the crime was committed by a witness for the state, * * * evidence of statements made by the witness out of court conflicting with his testimony is admissible as original evidence on behalf of the defense"). Use of Borrero's statement to impeach Rodriguez does not constitute "otherwise appropriate cross-examination."

Thus, we conclude that the trial court did not abuse its discretion and did not violate Lanz–Terry's Sixth Amendment confrontation rights when it prohibited Lanz–Terry from using a transcript of Borrero's prior testimony to impeach Rodriguez's assertion that she and Borrero were not intimately involved.

Affirmed.