STATE of Minnesota, Respondent,

v.

Samuel Lee BYERS, Appellant.

No. C4–96–212.

Court of Appeals of Minnesota.

Sept. 24, 1996.

Review Granted Dec. 17, 1996.

Hubert H. Humphrey, III, Attorney General, St. Paul, for respondent.

Michael O. Freeman, Hennepin County Attorney, Paul R. Scoggin, Assistant County Attorney, Minneapolis, for respondent.

John M. Stuart, State Public Defender, Mark F. Anderson, Assistant Public Defender, Minneapolis, for appellant.

Considered and decided by CRIPPEN, P.J., and PARKER and SHORT, JJ.

## OPINION

PARKER, Judge.

Appellant Samuel Lee Byers challenges his conviction for second-degree felony murder in violation of Minn.Stat. §§ 609.19(2), 609.11, and 609.05. Roy Griffin, the victim, was shot in the head during a robbery. Dywon Tatum and Byers, both members of the "Rolling 60s Crips" gang, were tried separately. Tatum testified at his own trial and implicated Byers and other Crips in the murder and robbery. Following Tatum's acquittal, the prosecution in Byers' trial sought to compel Tatum to testify. Tatum refused. The court held Tatum in contempt and allowed his former testimony to be used in Byers' trial. The jury convicted Byers of second-degree murder. On appeal, Byers argues the district court violated both the hearsay rule and his right to confrontation in admitting Tatum's prior testimony. We affirm the conviction.

## FACTS

On March 31, 1995, Roy Griffin had his cousin Chris Minor over to his apartment to visit. Griffin's girlfriend, Denise Berry, and Griffin's six-year old son were also present. Two men came to the door, and Griffin let them in for the apparent purpose of selling them marijuana. Then two more men came to the door and rushed in. Guns were drawn by the four entering men, who ordered Berry and Minor to the floor. The four men ransacked the apartment and demanded the keys to Griffin's car. Berry, with a gun in her face, searched for the keys. Griffin tried to stand and was struck in the head with a gun. When Griffin tried to stand again, one of the men shot him in the head in the presence of his son. The four men fled with Berry's purse and some cash taken from Minor. Neither Berry nor Minor saw which of the four men shot and killed Griffin. The entire robbery and murder lasted 20 to 25 minutes.

At Byers' trial, both Berry and Minor identified Byers as one of the robbers. Berry had also identified Byers from a police line-up prior to trial. She testified to her certainty in identifying Byers; Byers had held a gun to her head and she had gotten a good look at him. Minor also identified Byers from a line-up, but stated that he could not be certain unless he saw Byers in person. At trial, upon seeing Byers, Minor expressed certainty that he was one of the robbers. Both Minor and Berry testified that Byers wore a tan jacket during the robbery.

John Tatum, Dywon Tatum's brother, reluctantly testified for the state that earlier on the day of Griffin's murder, Byers and four other members of the Crips gang sat on the porch behind his home smoking marijuana and talked about "doing a jack," which is a street term for robbery. According to John Tatum, Byers wore a beige outfit at that time.

The district court in Byers' trial ordered Dywon Tatum to testify. Because Tatum had been acquitted, the court ruled that he no longer had a Fifth Amendment privilege. Although the state offered him use immunity, Tatum refused to testify and said that gang members cannot testify against each other. While Tatum denied that Byers had threatened him, he acknowledged that he would have problems with other people if he testified. His attorney claimed that Tatum's personal safety would be at risk if the court forced his client to testify. The court held Tatum in contempt and allowed a transcript of his former testimony (given at his own trial) to be used in Byers' trial.

In Dywon Tatum's testimony, he admitted that he and Byers were members of the Rolling 60s Crips gang and that Byers and other Crips went to rob Griffin. Tatum testified that he declined to go with them, but later saw Byers and others running away from the building in which Griffin lived. Dywon Tatum further testified that Byers subsequently admitted to him that he had taken part in the robbery, but said that another gang member shot Griffin. The court instructed the jury that, because of his unavailability, Dywon Tatum's testimony was not subject to cross-examination by Byers' attorney.

Both Byers and his girlfriend testified that they attended a movie together on the night of Griffin's murder.

The jury acquitted Byers of first-degree murder, but convicted him of second-degree felony murder. This direct appeal followed.

## ISSUES

**I.** Did the district court violate either the hearsay rule or Byers' right to confrontation by admitting the prior testimony of Dywon Tatum taken in Tatum's trial?

**II.** If the district court erred in admitting the former testimony of Dywon Tatum, was such error harmless beyond a reasonable doubt?

## DISCUSSION

### I.

The admission of hearsay and the right to confrontation are related issues in that both implicate a denial of the right to cross-examine a declarant. *See State v. Jones,* 553 N.W.2d 29 (Minn. 1996) (discussing relationship between hearsay rule and right to confrontation). When the district court admitted Dywon Tatum's former testimony, the judge reasoned that (1) the hearsay rule was not violated because, under the catch-all exception, Tatum was unavailable and his testimony bears adequate indicia of reliability; and (2) the gang "code of silence" resulted in a waiver of Byers' right to confrontation.

#### 1. *Unavailable/Adequate Indicia of Reliability*

■ The district court's decision on the admission of evidence is reviewed under an abuse-of-discretion standard. *State v. Starkey,* 516 N.W.2d 918, 925 (Minn.1994). Rule 804(b)(5) of the Minnesota Rules of Evidence is commonly referred to as the "catch-all" exception to the hearsay rule. The rule first requires that the witness be "unavailable" as defined by Rule 804(a), and Dywon Tatum was unavailable. *See* Minn. R. Evid. 804(a)(2) (a witness who persists in refusing to testify despite a court order to do so is unavailable). Once a witness is unavailable, the basic inquiry under the catch-all exception is whether the statement has circumstantial guarantees of trustworthiness equivalent to the first four hearsay exceptions in Rule 804(b). Minn. R. Evid. 804(b)(5); *see*

*also State v. Hansen,* 312 N.W.2d 96, 101 n. 3 (Minn.1981) (listing the six main conditions for admission under Minn. R. Evid. 804(b)(5)).

■ Minnesota courts employ a "cautious approach" in determining whether a statement is admissible under the catch-all exception. *State v. Stallings,* 478 N.W.2d 491, 496 (Minn.1991), *rehearing denied* (Minn. Jan. 28, 1992). In assessing the reliability of a witness's former testimony, the district court should consider

> the character of the witness for truthfulness and honesty, and the availability of evidence on the issue; whether the testimony was given voluntarily, under oath, subject to cross-examination and a penalty for perjury; the witness' relationship with both the defendant and the government and his motivation to testify * * *; the extent to which the witness' testimony reflects his personal knowledge; whether the witness ever recanted his testimony; the existence of corroborating evidence; and the reasons for the witness' unavailability. (Citation omitted.)

*Id.* at 495–96 (quoting *United States v. Snyder,* 872 F.2d 1351, 1355–56 (7th Cir.1989)).

■ The state relies mostly on the fact that Tatum testified under oath and subject to cross-examination. The reliability resulting from administering an oath to Tatum, however, is compromised by the fact that Tatum testified to exonerate himself. Tatum had a definite motive to lie and exculpate himself regarding his involvement in the murder of Griffin. While not every defendant lies under oath, the administration of an oath does not by itself guarantee trustworthiness equivalent to that of the established hearsay exceptions. Additionally, although the state cross-examined Dywon Tatum in Tatum's trial and sought to generally impeach his testimony, the state lacked a motive for exculpating Byers. In fact, the state had a motive to elicit testimony from Tatum inculpating Byers, whereas the focus of any cross-examination of Tatum by Byers would be to exculpate Byers. This is particularly troubling and makes any indicia of trustwor-

thiness inherent in Tatum's testimony, at best, dubious.

■ The state argues that Tatum's testimony is analogous to two other hearsay exceptions, former testimony and statement against interest. *See* Minn. R. Evid. 804(b)(1), 804(b)(3). Initially, we note the state has failed to demonstrate how this case is analogous to a statement against penal interest;[1] rather, Tatum's testimony was *in* his own interest.

■ The former testimony exception is, with regard to criminal cases, limited to situations "involving a retrial of the same defendant for the same or an included offense." Minn. R. Evid. 804(b)(1). Because Byers' trial was not the "retrial" of Dywon Tatum, the exception does not apply. Further, this case is not analogous to the former testimony exception because, as we have noted, the state did not have the same focus as Byers would have in cross-examining Dywon Tatum. Essentially, the state prosecutor cannot be considered the guardian of Byers' rights. We observe that, frequently, the use of the catch-all exception is to fashion "new exceptions to the hearsay rule." Minn. R. Evid. 804(b)(5) 1989 comm. cmt. This case does not present a new exception to the hearsay rule but, rather, constitutes an attempt to expand a hearsay exception (former testimony) beyond its stated bounds.

■ Accordingly, in the absence of guarantees of trustworthiness, we do not think it proper to rely on the catch-all exception to hearsay to admit former testimony beyond the specified boundaries of the former testimony exception. *See* Minn.Stat. § 645.19 (1994) ("Exceptions expressed in a law shall be construed to exclude all others"). We conclude that the testimony of Dywon Tatum lacked sufficient guarantees of trustworthiness for admission under the catch-all exception.[2] Therefore, the district court abused discretion in admitting Tatum's testimony.

### 2. Waiver of Right to Confrontation

■ A criminal defendant is guaranteed the right to be confronted with the witnesses against him or her. U.S. Const. amend. VI; Minn. Const. art. I, § 6. The main purpose of the confrontation clause is to secure the defendant's opportunity for cross-examination. *State v. Lanz–Terry,* 535 N.W.2d 635, 640 (Minn.1995) (citing *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974)). Thus, the confrontation clause limits the discretionary power of the district court. *Lanz–Terry,* 535 N.W.2d at 640.

■ With respect to a defendant's right to confrontation, the supreme court has held that

[t]he Sixth Amendment does not stand as a shield to protect the accused from his own misconduct or chicanery. * * * To permit the defendant to profit from such conduct would be contrary to public policy, common sense and the underlying purpose of the confrontation clause.

*State v. Black,* 291 N.W.2d 208, 214 (Minn. 1980) (quoting *United States v. Carlson,* 547 F.2d 1346, 1359 (8th Cir.1976), *cert. denied* 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977)). A defendant waives the right to confrontation when he or she engages in threatening conduct that procures the unavailability of a witness. *State v. Peirce,* 364 N.W.2d 801, 807 (Minn.1985) (citing *Hansen,* 312 N.W.2d at 104). Waiver does not occur, however, where the witness simply fears retribution without being specifically threatened

---

1. If indeed the statement against interest exception to the hearsay rule applied to Dywon Tatum's testimony, we note that admission would be limited to the self-inculpatory portions of the testimony. *See State v. Dukes,* 544 N.W.2d 13, 18–19 (Minn.1996) (under *Williamson v. United States,* 512 U.S. 594, ——, 114 S.Ct. 2431, 2435, 129 L.Ed.2d 476 (1994), the statement against interest exception "does not allow the admission of non-self-inculpatory statements even in the broader context of a generally self-inculpatory narrative").

2. Even assuming the facts here satisfied the catch-all exception to the hearsay rule, Byers' right to confrontation was not necessarily vindicated. *See Idaho v. Wright,* 497 U.S. 805, 814, 110 S.Ct. 3139, 3146, 111 L.Ed.2d 638 (1990) (fact that evidence is admissible as an exception to the hearsay rule does not automatically satisfy requirements of the confrontation clause).

by the defendant. *Hansen,* 312 N.W.2d at 105. Even the defendant's "reputation for violence" does not qualify as a waiver in the absence of a specific threat. *Id.* at 105 n. 7. Because the right to confront a witness is personal to the defendant, witness intimidation by a co-conspirator cannot be imputed to the defendant unless the intimidation can be properly attributed to the defendant. *Olson v. Green,* 668 F.2d 421, 429 (8th Cir. 1981).

█ The district court ruled that Byers waived his right to confrontation by benefiting from the gang code of silence utilized by Dywon Tatum. It appears this code of silence is enforced by creating a fear of retribution. However, the district court did not make a finding of threats directly attributable to Byers, nor is there any testimony to this effect. This lack of a specific threat by Byers indicates that, under existing law, Byers did not waive his right to confrontation. We decline the invitation to extend the existing law, while recognizing that there may be merit to the suggestion, because we consider it more appropriately the province of the supreme court. Because no threat can be directly attributable to Byers, we conclude the district court erred in finding waiver and ultimately failed to vindicate Byers' right to confrontation.[3] As the supreme court noted in *Hansen,*

> [t]o find a waiver based on a witness' reluctance to testify, absent any evidence of threats attributable to defendant, would destroy the right of confrontation in nearly all cases of alleged crimes against persons.

312 N.W.2d at 105.

## II.

█ Because the court erred in admitting Tatum's former testimony, the issue becomes whether such error was harmless beyond a reasonable doubt. *See State v. Pride,* 528 N.W.2d 862, 867 (Minn.1995) (a district court's violation of the confrontation clause is subject to harmless error analysis); *State v. Scott,* 501 N.W.2d 608, 619 (Minn.1993) (applying harmless error analysis to court's admission of hearsay). "Evidence admitted in

violation of the confrontation clause is not harmless unless the evidence is otherwise overwhelming." *State v. Washington,* 521 N.W.2d 35, 42 (Minn.1994) (quoting *Hansen,* 312 N.W.2d at 105).

█ Setting aside the testimony of Dywon Tatum, we conclude that the state presented overwhelming evidence of Byers' guilt. Both Minor and Berry gave eyewitness identification of Byers as one of the robbers, specifically the one wearing a tan jacket. The identification of Byers occurred both at trial and in police photo line-ups. During the robbery, Berry got a good look at Byers because he had a gun to her head and because he took her purse. John Tatum testified that Byers and other Crips discussed committing a robbery in his presence as they sat on John Tatum's porch earlier that day.

Despite Byers' presentation of what purported to be an alibi defense, his own testimony revealed considerable circumstantial evidence of guilt. Byers admitted he had a tan jacket and may have worn it on March 31, 1995. He admitted his presence with other Crip suspects on John Tatum's porch on the day of the murder. He admitted that he and his friends may have engaged in a discussion about "jacks." Byers also admitted he and Dywon Tatum had been to Griffin's apartment on prior occasions to buy marijuana. Byers further admitted he left for Cleveland the day after the murder and that he lied to police when he told them he had been there since Christmas.

Accordingly, we conclude that a typical jury would have reached the same verdict in the absence of Dywon Tatum's testimony. Thus, although we conclude that the district court erred in admitting the evidence, we hold the error to have been harmless beyond a reasonable doubt.

## DECISION

Although the admission of Dywon Tatum's testimony was contrary to the hearsay rule and violative of the confrontation clause, we hold this error to be harmless beyond a

---

**3.** Further, unlike in the confrontation clause cases of *Black, Peirce,* and *Hansen,* the testimony of Dywon Tatum does not fit under any established hearsay exception.

reasonable doubt and uphold Byers' conviction of murder in the second degree.

**Affirmed.**