*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2327**

State of Minnesota,
Respondent,

vs.

Levi Braziel, Jr.,
Appellant.

**Filed December 29, 2014
Affirmed in part, reversed in part and remanded
Ross, Judge**

Hennepin County District Court
File No. 27-CR-13-19649

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jenna Yauch-Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Schellhas, Judge; and Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

Minneapolis police conducting drug-deal surveillance watched Levi Braziel engage in multiple hand-to-hand street transactions and found nine rocks of cocaine in a

tissue Braziel tossed aside when he saw officers approaching. On the morning of his trial for third-degree sale and fifth-degree possession of a controlled substance, Braziel asked for additional discovery to obtain the police department's internal affairs records, including records arising from his prior complaint about one of the arresting officers. The district court denied the motion as untimely and later refused to permit Braziel to question the officer about the internal affairs investigation. Although the district court abused its discretion by refusing to permit the questioning into the officer's potential bias, the error was harmless. We affirm Braziel's conviction of third-degree sale, but we reverse the conviction of fifth-degree possession and remand to the district court to vacate that conviction and amend the sentence because one of the convictions arose from a lesser-included offense.

## FACTS

Minneapolis police received a tip from a confidential informant in June 2013 reporting a person acting suspiciously on Franklin Avenue. Plainclothes officers Steven Lecy and Jamie Karshbaum arrived and investigated from an unmarked van. They recognized the man who matched the description as Levi Braziel, whom Officer Lecy had previously arrested. They watched Braziel interact with three different people in hand-to-hand transactions during which Braziel removed something from a crumpled tissue in his left hand, handed the item to someone, and then received cash from that person.

Lecy and Karshbaum decided to arrest Braziel and called a uniformed officer, Sergeant Brian Anderson, to assist. Sergeant Anderson approached Braziel. When Braziel appeared to notice the sergeant approaching, he turned quickly. Sergeant Anderson saw

2

Braziel look down and move his hand near his waist. Officer Lecy ran toward Braziel from the opposite direction. Lecy saw Braziel first try to conceal the tissue and then throw it to the ground. Sergeant Anderson restrained Braziel, and Lecy picked up the discarded tissue. The tissue held nine individually wrapped rocks of crack cocaine, each with a street value of $20. The officers also found $267 cash in Braziel's pockets, mostly in 20-dollar bills.

Officer Lecy knew Braziel. He had arrested him in 2010 for suspected drug dealing. *See State v. Braziel*, No. A11-0748, 2012 WL 1813281 (Minn. App. May 21, 2012). We reversed the conviction that arose from that arrest because we deemed the search invalid, *id.* at *5, and according to Braziel, Braziel filed an internal-affairs complaint against Lecy related to that arrest.

The state charged Braziel in this case with fifth-degree possession and third-degree sale of a controlled substance. Braziel demanded a speedy trial, and the district court scheduled the jury trial.

Braziel asked for additional discovery on the morning set for trial. He sought the police department's internal-affairs records of the arresting officers, including the records arising from his own alleged prior complaint about the 2010 arrest. Braziel had previously asked his appointed counsel to gather these records, but she had not attempted to obtain them. The district court denied the motion as untimely. Braziel dismissed his appointed counsel. The attorney continued to assist him in an advisory capacity. Braziel at first requested a continuance to prepare for trial, but he withdrew the request and represented himself at trial.

3

The state introduced testimony tending to prove the account detailed above. The prosecutor called the three arresting officers. She elicited testimony about how officers in their unit generally receive and use tips. She also asked Officer Lecy to discuss the specific tip in this case. The officer testified that he had received information that a black male wearing a black polo-style shirt and white tennis shoes was dealing drugs at Tenth Avenue and East Franklin Avenue. Braziel objected unsuccessfully to the admission of this hearsay testimony.

Braziel cross-examined the officers, attempting to pursue a theme of police bias against him. Braziel tried to ask Officer Lecy about the alleged internal affairs investigation, and he also attempted to elicit testimony that the officers had mistreated him during his arrest in this case. The district court prohibited this questioning.

The jury convicted Braziel of third-degree sale and fifth-degree possession of a controlled substance. *See* Minn. Stat. §§ 152.023, subd. 1(1), .025, subd. 2(b)(1) (2012). The district court sentenced Braziel to 60 months on the third-degree conviction and 24 months on the fifth-degree conviction, and it ordered that both sentences be served concurrently. Braziel appeals.

## D E C I S I O N

Braziel cites what he contends are trial irregularities and asks us to reverse his conviction or to remand so the district court can assess the admissibility of Officer Lecy's internal affairs file *in camera*. He also asks us to vacate his conviction of fifth-degree possession and amend his sentence. Although we agree that the district court should have allowed Braziel to cross-examine officers to explore their alleged bias against him, we

4

believe any errors are harmless. Because Braziel persuasively argues, and the state agrees, that he cannot be convicted and sentenced for the lesser-included offense of possession, we reverse that conviction and remand for the district court to amend the sentence.

# I

Braziel argues that the district court denied his right to discover public information about Officer Lecy in the police department's internal-affairs file. District courts have broad discretion in criminal discovery rulings. *State v. Burrell*, 697 N.W.2d 579, 604 (Minn. 2005). Braziel's argument about the internal-affairs file attempts to fault the district court for the shortcomings of his own defense, and it also rests on a mischaracterization of events at trial.

Braziel argues that he was entitled to the discovery that he sought on the day of trial. His argument fails for two reasons.

First, Braziel's argument does not take into account the reason for the district court's decision—untimeliness. He waited until the day of trial to seek the discovery, so the district court could either order a continuance to allow the discovery or deny the discovery request because no continuance was sought. The district court clearly rested its decision on its concern about the timeliness of Braziel's trial. Ordinarily we review the district court's denial of a motion for a continuance under a clear-abuse-of-discretion standard. *State v. Rainer*, 411 N.W.2d 490, 495 (Minn. 1987). But here, Braziel himself took the issue off the table. After Braziel's discovery request, the district court denied the request because of its impact on the trial date, but it then twice offered Braziel the chance

5

to postpone the trial (once before jury selection and once before opening statements). The court carefully explained that if a continuance were granted, Braziel could renew his discovery requests. Braziel then clarified that he did not want a continuance. Because Braziel chose to proceed to trial rather than to delay trial for the district court to explore his last-minute discovery request, he cannot successfully claim that the district court abused its discretion by refusing his continuance-related discovery request.

Even if Braziel could show an abuse of discretion in the district court's decision to deny his discovery request, still his appeal of the decision would fail. He insists that the information he sought through his day-of-trial discovery request should not have been withheld from him because the information is publicly available. His premise defeats his argument because it establishes that he was not prejudiced by the district court's discovery ruling. *See State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003) (requiring prejudice before reversing based on exclusion of evidence). Generally, with respect to information on individuals, "[a]ll government data collected, created, received, [or] maintained . . . by a government entity shall be public unless classified by statute . . . as private or confidential." Minn. Stat. § 13.03, subd. 1 (2012). For public employees, like Officer Lecy, public personnel data includes "the existence and status of any complaints or charges against the employee, regardless of whether the complaint or charge resulted in a disciplinary action," as well as "the final disposition of any disciplinary action together with the specific reasons for the action." Minn. Stat. § 13.43, subd. 2(a)(4)–(5) (Supp. 2013). Because Braziel specifies that the only information he sought through discovery was public data, he necessarily acknowledges that he could have obtained the

information from the city or police department on his mere request without regard to any discovery decisions by the district court. *See* Minn. Stat. § 13.03, subd. 3(a), (c) (2012) (requiring government entities to copy and transmit public data on request). Because Braziel gives no reason why he could not have obtained the public information on his own, he has not established that the district court's discovery decision prejudiced him.

II

Braziel argues that even though he went to trial without obtaining Officer Lecy's internal-affairs record, he should have been allowed to cross-examine the officer about its underlying bases and contents. We review a challenge to the district court's decision to exclude evidence for a clear abuse of discretion that prejudiced the appellant. *Amos*, 658 N.W.2d at 203.

We agree that the fact of Braziel's complaint against Officer Lecy and any resulting investigation or discipline were fair ground for Braziel's cross-examination to reveal possible bias against him. A witness's bias is always relevant to his credibility and to the weight of his testimony, and bias may be proved using extrinsic evidence. Minn. R Evid. 616; *State v. Lanz-Terry*, 535 N.W.2d 635, 640 (Minn. 1995). Not only is bias always relevant, the Confrontation Clause "contemplates a cross-examination of the witness in which the defendant has the opportunity to reveal a prototypical form of bias." *Lanz-Terry*, 535 N.W.2d at 640. The state explains that "the trial court summarized that the defense theory was based on an ongoing hostility by the police against Appellant, who claimed that the police knew him, did not like him, planted the drugs, and then

7

arrested him." On this summary, it was clear at trial that Braziel sought to defend based on police bias. The summary is consistent with the questioning.

Braziel attempted several times to cross-examine the officers about potential bias arising from his 2010 arrest after the state introduced the notion that Officer Lecy and Braziel had a previous encounter resulting in some sort of formal adversarial proceeding. Officer Lecy had first testified during his direct examination that Braziel "kept telling us he was going to sue us again." When Braziel then attempted to question Officer Lecy about their previous encounter, the state objected. Braziel told the court that he intended to ask the officer about his comment that he would "sue [police] again." He insisted that his "report [against the officer was] not frivolous if [the officer] was reprimanded for it, if he was found by his own superiors in internal affairs to have committed misconduct and violated Minneapolis police policies and procedures."

The district court answered, "I've already ruled on that issue. We are not talking about internal affairs." Later when Braziel attempted to explore with another testifying officer "another arrest where you were involved with me," the district court interrupted *sua sponte*, telling him, "Mr. Braziel, no. Move on."

The district court correctly observed that it had already ruled on Braziel's request for the internal-affairs documents through discovery. But we do not believe that this ruling prohibits Braziel from exploring directly with the officers whether Officer Lecy may have developed a bias against him. The state makes a foundational argument, maintaining that Braziel had not established a sufficient basis for questioning about the complaint and alleged investigation. The argument is not persuasive. Braziel had already

8

represented his personal knowledge about the administrative complaint and the basis for it. Officer Lecy testified that Braziel had "sued" police before, and the police reports referred to Braziel's administrative complaint. Braziel presented a good-faith basis to inquire into whether Officer Lecy had been the target of a complaint filed by Braziel and to explore his potential resulting bias against Braziel. The proper inquiry would not need to venture astray into whether Braziel's complaint was valid; the limited issue was whether some reason existed for the officer to have developed a grudge against him.

On this background, we believe the district court should not have so quickly curtailed Braziel's questioning. But we will not find error if the jury had "sufficient other information to make a discriminating appraisal of the witness's bias or motive to fabricate." *Lanz-Terry*, 535 N.W.2d at 641 (quotation omitted). Officer Lecy had already testified that Braziel had brought some sort of formal charges before the arrest occurred in this case. This mitigates any unfairness resulting from the district court's ruling.

And more important to our decision here, even if Officer Lecy had some bias against Braziel, the conviction rests substantially on evidence that does not depend on Officer Lecy's credibility. We will not reverse if the error is harmless. Minn. R. Crim. P. 31.01. The only aspect of Officer Lecy's account that was not witnessed by another officer was Braziel's throwing the tissue on the ground. All of the direct evidence of Braziel's guilt, corroborated by the circumstantial evidence that Braziel was the one who threw the tissue, renders any error about the limits to the questioning harmless. Officer Karshbaum testified that she saw Braziel holding the tissue moments before the arrest. Officer Anderson testified that he saw Braziel turn and move his hand toward his waist

9

and that he saw Officer Lecy pick up the tissue. None of Braziel's proffered bias evidence about Officer Lecy would have impeached this testimony. The district court's evidentiary error was harmless.

Braziel also sought to present evidence that Lecy had recently acted on his alleged bias against him. He claimed that officers had lied about him and treated him harshly. A district court is not required to admit all evidence that might indicate bias. "[N]ot everything tends to show bias, and courts may exclude evidence that is only marginally useful for this purpose." *Lanz-Terry*, 535 N.W.2d at 640. If the bias evidence is attenuated and unconvincing, it need not be admitted. *Id*. Braziel's claim of bias proved by supposed rough treatment during his arrest falls into these categories.

### III

Braziel argues that the district court should not have admitted the officer's testimony revealing the substance of the confidential informant's tip. We review evidential rulings for abuse of discretion. *Amos*, 658 N.W.2d at 203. Officer Lecy testified to some details about the informant's tip, including that "somebody was out selling drugs" in the area and that this person was a "black male wearing a black Polo shirt and . . . white tennis shoes." Braziel did not object to this hearsay testimony until after direct examination had ended, but Braziel maintains that the district court could have instructed the jury not to consider the testimony.

Hearsay is generally inadmissible. Minn. R. Evid. 802. The hearsay testimony here went beyond evidence that Officer Lecy was motivated by a tip. It gave jurors the impression that Braziel had been on the street selling drugs for some time before the

10

officers arrived. But the risk that this evidence significantly affected the jury's decision is slight. The evidence of Braziel's guilt is too substantial to conclude otherwise. Three testifying officers provided ample evidence on every element of the charges. The officers watched Braziel conduct multiple apparent drug transactions. Braziel tried to avoid the officers as soon as he saw them, and the officers found crack cocaine that he had just discarded on the ground along with a large sum of cash mostly in drug-sale denominations on his person. The error was harmless.

**IV**

The state agrees with Braziel that both of his convictions arose from the same behavioral incident and that he should have been convicted and sentenced for only the third-degree sale offense. That is, the fifth-degree possession crime is a lesser-included offense. *See* Minn. Stat. §§ 609.04, subd. 1, .035, subd. 1 (2012). We reach the same conclusion and reverse Braziel's conviction of fifth-degree possession of a controlled substance. We remand to the district court to vacate the conviction and amend the sentence.

**Affirmed in part, reversed in part and remanded.**