*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1772**

State of Minnesota,
Respondent,

vs.

Jermaine Sylvester Watkins,
Appellant.

**Filed March 28, 2016
Affirmed
Reilly, Judge**

Hennepin County District Court
File No. 27-CR-13-16209

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jean Burdorf, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

J. Anthony Torres, Minneapolis, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Stauber, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REILLY**, Judge

On appeal from his convictions of aggravated robbery and kidnapping, appellant argues (1) the district court erred when it allowed the state to introduce the complainant's prior hearsay statement as substantive evidence; (2) he was denied his right to confrontation

when the court denied his motion to impeach the state's primary witness with his numerous felony convictions; and (3) he is entitled to a new trial because the prosecution suppressed favorable evidence. We affirm.

**FACTS**

In May 2013 complainant J.T. ran into his friend Pierre Cooley at a gas station in North Minneapolis. Cooley invited J.T. to his house to "hang out." When J.T. arrived at the house he was "bum rushed" by Cooley and two other men. J.T. identified one of the men as his friend appellant Jermaine Watkins.[1] The men brought J.T. to the basement of the home and tied him to a folding chair with cords and duct tape. They stole his wallet, a piece of jewelry, his cell phone, a pair of Louis Vuitton tennis shoes, and $5,000. Appellant made J.T. call his parents to arrange a meeting to get more money. They planned to escort J.T. to the meeting, but when they brought him outside he escaped. J.T. fled to a nearby house where he kicked in the door, and begged the resident to call 911. The police arrived at the scene approximately 15 or 20 minutes later, and J.T. was taken to the police station. At the station he gave a statement and identified appellant and Cooley in photographic lineups.

Fifteen months later, at appellant's jury trial, J.T. testified he could not remember most of what happened on the evening in question, even after having his recollection refreshed. When presented with his statements to the officers he said

> I'm not denying that I probably said that in that paper, but I'm telling you right now I don't remember. If I . . . answer your questions and say yes, no, I'd be lying. So by me telling you

---

[1] J.T. was unable to identify the third man.

that I can't recall I'm giving you the best honest answer because if I just sit here and try to make up something I'll be misleading people.

J.T. testified he remembered some of the details of that evening including that he was taken to the basement of the home, duct taped to a chair, and assaulted, that his wallet, shoes, and $5,000 were stolen, that he escaped when he was let outside, and that he broke into a neighbor's house. However, at trial, he was unable to identify appellant as one of his assailants. The prosecutor appeared surprised by the memory loss, but J.T. testified that he told the prosecutor about his memory loss at a meeting six weeks before trial.

After J.T.'s direct examination, the trial broke for lunch. During the break the prosecutor sent an e-mail to defense counsel and the district court to provide notice that he would move to admit J.T.'s prior police statements as substantive evidence under the residual exception to the hearsay rule. After lunch, the district court briefly heard arguments from the parties, and reserved its ruling so defense counsel could have time to "take a look at" the rule. J.T. then returned to the stand and was extensively cross-examined about his statements to the officers. The district court ultimately allowed the officers to testify about J.T.'s prior statements.

## D E C I S I O N

## I.

Appellant argues the district court erred in admitting J.T.'s out-of-court statements as substantive evidence. We review evidentiary rulings under an abuse of discretion standard. *State v. Matthews*, 779 N.W.2d 543, 553 (Minn. 2010). For reversal based on a

district court's evidentiary ruling, an appellant must prove that the admission of evidence was erroneous and prejudicial. *State v. Loving*, 775 N.W.2d 872, 879 (Minn. 2009).

J.T.'s out-of-court statements are hearsay. *See* Minn. R. Evid. 801(c) (defining hearsay as an out-of-court statement offered to prove the truth of the matter asserted). Although under Minn. R. Evid. 802 hearsay is generally not admissible at trial, it may be admissible if it is covered by an exception to the hearsay rule. *State v. Robinson*, 699 N.W.2d 790, 794 (Minn. App. 2005), *aff'd*, 718 N.W.2d 400 (Minn. 2006). The residual exception to the hearsay rule provides that a statement with "circumstantial guarantees of trustworthiness," is not excluded by the hearsay rule, if the court determines that: (1) "the statement is offered as evidence of a material fact"; (2) "the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts"; and (3) "the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence." Minn. R. Evid. 807. Additionally, there is a notice requirement, such that the statement is not admissible unless "the proponent of it makes known to the adverse party, sufficiently in advance of the trial or hearing, to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it." *Id.* Appellant argues J.T.'s statements are inadmissible under this rule because they are not trustworthy and he did not have proper notice.

### *Trustworthiness*

We apply a totality of the circumstances approach to determine whether a statement has circumstantial guarantees of trustworthiness. *State v. Keeton*, 589 N.W.2d 85, 90

4

(Minn. 1998). *State v. Ortlepp* provides nonexclusive factors to consider when determining if "circumstantial guarantees of trustworthiness" are present including whether (1) there is a confrontation problem, (2) the declarant admits making the prior statement, (3) the statement is against the declarant's penal interest, and (4) the statement is consistent with all the other evidence presented by the state. 363 N.W.2d 39, 44 (Minn. 1985).

Appellant argues that J.T.'s prior statements lack circumstantial guarantees of trustworthiness because "[u]nlike [in] *Ortlepp*, [J.T.] denied speaking with the officer in any detail[,]" and J.T. denied telling the officer who was holding him against his will. However, these assertions are not supported by the record. At trial, J.T. did not deny speaking with the officer in detail, he testified he "[didn't] really recall" having a detailed conversation, but acknowledged that he "probably did."[2] J.T. also admitted to identifying appellant in a photographic lineup.[3]

---

[2] J.T. testified:

> Q.    Do you remember identifying Pierre Cooley to the officer at the scene as one of the individuals who robbed you?
>
> A.    I probably told him that that's how I got there but I don't recall really having a detailed conversation with the officer about what was going on.
>
> Q.    So if that officer wrote a report though he would, he would have down the notes?
>
> A.    What I said to him probably.
>
> Q.    What you said at that time?
>
> A.    Right, right.

[3] J.T. testified:

> Q.    [D]o you remember what happened when you were at the police station?
>
> A.    Set there for a minute and then had a conversation.

5

Appellant next argues that J.T.'s statements lack circumstantial guarantees of trustworthiness because J.T. was under arrest for breaking into an occupied house before he gave the statement to the officer.[4] This argument is not persuasive, because while it is plausible that the arrest could provide a motive to fabricate the robbery and kidnapping, it does not provide motive to make a false identification regarding his assailants.[5]

Appellant next argues that J.T.'s statements lack circumstantial guarantees of trustworthiness because when one of the officers testified, he asked to refer to his reports at least ten times on the stand. However, "[t]he focus of rule 807 is the statement, not the testifying witness who heard the statement." *State v. Ahmed*, 782 N.W.2d 253, 261 (Minn.

---

Q. Okay and you talked to a different officer at the police station?
A. Yep.
Q. Do you remember going through several photographic line-ups?
A. With the officer?
Q. Yeah.
A. Yeah, I can recall him pulling out some pictures.
Q. Yep and do you remember selecting specific photographs of the people who robbed you?
A. Uh huh.
Q. Yes.
A. Correct.
Q. And do you agree that one of the individuals who you identified in the photographic line-up was the defendant?
A. Correct.

[4] The officers briefly detained J.T. for breaking into the neighbor's house while investigating the incident. No charges were filed once it was determined that J.T. broke in during his escape from the kidnapping.

[5] DNA and other physical evidence in the basement of Cooley's home corroborated J.T.'s statements to the police.

App. 2010). "Similarly, the analysis required by the rule focuses on whether the statement itself is reliable, not whether the person to whom the statement is made is reliable." *Id.* It is of no consequence to the rule 807 analysis that the officer relied on his report while testifying.

The district court made findings on the record as to why J.T.'s statements had circumstantial guarantees of trustworthiness. Specifically, it noted that J.T. "acknowledged [in] his testimony . . . that the statements he made to police were truthful[,]" that J.T. "repeated subsequent prior statements to police at least twice and those statements were made shortly after the alleged offense[,]" and that J.T.'s "prior statements were voluntary, recounted specific details based upon firsthand knowledge, . . . were corroborated by other evidence and have not been recanted by [J.T.]." *See Robinson*, 718 N.W.2d at 410 (determining a statement was admissible under rule 807 when it was volunteered without suggestive or leading questions); *State v. Tate*, 682 N.W.2d 169, 177 (Minn. App. 2004) (determining a statement was admissible under the catchall exception when "it was made the day after the incident" and was "substantially consistent" with other evidence offered by the state), *review denied* (Minn. Sept. 29, 2004). For the reasons addressed by the district court, we agree that under the totality of the circumstances J.T.'s statements to the officers had circumstantial guarantees of trustworthiness.

### *Notice*

Appellant also argues that the statements are inadmissible because the state did not comply with the notice requirement. Rule 807 requires notice "sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet

7

it . . . ." The state provided notice via e-mail during the trial, and, therefore, did not strictly comply with the rule. However, under the circumstances, strict application with the notice requirement was impractical. The need for the statements only became evident when J.T. had unexpected memory loss on the witness stand. Appellant had copies of the police reports and the transcripts associated with J.T.'s prior statements in advance of trial. It was not an abuse of discretion to admit J.T.'s prior statements when appellant was aware of the prior statements, and the state used them in response to J.T.'s memory loss on the stand. *See, e.g.*, *United States v. Carlson*, 547 F.2d 1346, 1355 (8th Cir. 1976) (noting a notice requirement "should not be an inflexible and imposing barrier to the admissibility of probative evidence when the peculiar circumstances of a case militate against its invocation.").

## II.

Appellant next argues he was denied his right to confrontation under the Sixth and Fourteenth Amendments when the court denied his motion to impeach J.T. with all seven of J.T.'s prior felony convictions. The court ruled that defense counsel could not mention any conviction by name, but allowed defense counsel to impeach J.T. by saying he had been convicted of a felony "on at least one prior occasion."

A similar argument was raised in *State v. Lanz-Terry*, where the Minnesota Supreme Court addressed "whether the trial court violated Lanz-Terry's right to confront witnesses under the Sixth Amendment by precluding him from questioning [a witness] about [the witness's] five prior felony convictions." 535 N.W.2d 635, 639 (Minn. 1995). In *Lanz-Terry*, "[d]efense counsel sought to admit this evidence to impeach [the witness's]

8

credibility as a witness." *Id.* Similar to the present case, the witness's "convictions did not involve 'dishonesty or false statement' and, therefore, the trial court possessed the discretion to restrict the use of the prior convictions." *Id.* (citing Minn. R. Evid. 609(a) (2)).

Felony convictions that meet certain requirements are admissible for "the purpose of attacking the credibility of a witness" if "the court determines that the probative value of admitting this evidence outweighs its prejudicial effect." Minn. R. Evid. 609(a). It is generally within the district court's discretion to sanitize a witness's prior convictions. *See State v. Hill*, 801 N.W.2d 646, 650 n.1 (Minn. 2011) (explaining a "sanitized" felony conviction refers to "the admission of evidence that a witness has committed a prior felony conviction without revealing the nature or details of the conviction at the time of impeachment"). Here, the district court implicitly determined the probative value of the convictions was low. It stated "I'm disinclined to allow impeachment using the Aggravated Robbery, the Assault, the DWI, I don't see frankly how any of the alleged victim's convictions related to his credibility and that they don't involve convictions of dishonesty. I'll also say that convictions have marginal relevance. . . ." The district court implicitly determined the low probative value was outweighed by the potential for unfair prejudice. It noted "I'm concerned about harassment and confusing a jury or misleading a jury." The district court's concern about confusing or misleading the jury is supported by the reasoning in *Lanz-Terry* where the supreme court determined it was not an abuse of discretion when the district court excluded all five of the witness-victim's felony convictions noting "the convictions might have led the jury to conclude that [the victim]

9

was a bad person who deserved to be the victim of a crime, which would amount to a decision being made on an improper basis." 535 N.W.2d at 639. The same concern was present here.

However, in *Lanz-Terry* the supreme court also noted "the discretionary authority of the judge to control the scope of cross-examination is limited by the Sixth Amendment." *Id.* at 640. Due process requires that every defendant be "afforded a meaningful opportunity to present a complete defense." *State v. Richards*, 495 N.W.2d 187, 191 (Minn. 1992). In the present case, J.T.'s prior felony convictions were sanitized, not excluded, and they were of marginal relevance to his testimony. Additionally, the record was replete with other, more relevant, evidence that was used to impeach J.T. The jury heard that J.T. was on parole at the time of the kidnapping and burglary, that in the past he had "sold weed," along with ample other evidence that pointed to J.T. being a drug dealer. Although the jury did not hear evidence related to J.T.'s felonies, appellant was able to use other evidence to impeach the credibility of J.T. Appellant was not denied a meaningful opportunity to present a complete defense when the district court sanitized J.T.'s felony convictions, and therefore, his Sixth Amendment right was not violated.

### III.

Appellant next argues that he is entitled to a new trial based on violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963). In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.

10

Ct. at 1196-97. There are "three components necessary for a 'true *Brady* violation.'" *Pederson v. State*, 692 N.W.2d 452, 459 (Minn. 2005) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936 (1999)).

> First, the evidence at issue must be favorable to the accused, either because it is exculpatory or it is impeaching. Second, the evidence must have been suppressed by the state, either willfully or inadvertently. Third, prejudice to the accused must have resulted. All three components must be met in order for a *Brady* violation to be found.

*Id.* (citation omitted).

Appellant claims there was a *Brady* violation because J.T. testified at trial that he informed the state of his memory loss six weeks before trial. The district court held a *Brady* hearing mid-trial. The state denied having any knowledge of J.T.'s memory loss before J.T. testified at trial. The district court heard evidence from a victim advocate who was present at the meeting where J.T. allegedly informed the state of his memory loss. The victim advocate corroborated the state's assertions that they had no such knowledge. The district court did not find J.T. to be credible and "certainly" found the victim advocate to be credible. We defer to the district court's credibility determinations. *State v. Miller*, 659 N.W.2d 275, 279 (Minn. App. 2003), *review denied* (Minn. July 15, 2003).

The district court credited the testimony of the victim advocate and found the state was unaware of J.T.'s memory loss until trial. It follows that when the state was unaware of the alleged favorable evidence, the state did not withhold the evidence from appellant. Because the state did not suppress any evidence, the second component was not met and

11

appellant has not shown that a "true *Brady* violation" occurred, and, thus, appellant is not entitled to a new trial under *Brady*. *Pederson*, 692 N.W.2d at 459.

      **Affirmed.**