David T. HOLT, Appellant,

v.

UNITED STATES, Appellee.

Robert L. HOWARD, Appellant,

v.

UNITED STATES, Appellee.

Nos. 10918 and 10920.

District of Columbia Court of Appeals.

Argued Oct. 20, 1977.

Decided Jan. 10, 1978.

Edward DeV. Bunn, Arlington, Va., appointed by this court, for appellant in No. 10918.

Harold B. Peek, Washington, D. C., appointed by this court, for appellant in No. 10920.

Edward D. Ross, Jr., Asst. U. S. Atty., Washington D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, William D. Pease and M. Elizabeth Medaglia, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KERN, GALLAGHER and HARRIS, Associate Judges.

GALLAGHER, Associate Judge:

■ Appellants were tried by a jury and convicted of the unlawful possession of a dangerous drug, preludin. (D.C.Code 1973, § 33–702(a)(4)). They contend on appeal that the trial court erred in refusing them an opportunity to impeach the rebuttal testimony of a government witness that appellant Holt was under the influence of narcotics at the time of his arrest.[1] Finding no reversible error, we affirm.

The government's case at trial consisted primarily of the testimony of the two arresting officers. At approximately 1 p. m. on November 21, 1975, Narcotics Squad Detectives Harvey Norris and Ira Heane were patrolling the area around 4th and M Streets, N.W., when they observed appellants engaged in what appeared to be a narcotics transaction. The officers drove their unmarked cruiser through an alley and parked slightly behind appellants. As they alighted from the car, the officers saw Howard accept money from Holt in exchange for "something" which Howard placed in Holt's hand. Detective Norris testified that when he was directly behind Holt he saw one pink tablet in his hand. Norris immediately took Holt's hand and told him to "drop the pills." Holt complied and dropped five pink pills into Norris' hand.

Appellants presented a different version of the arrest. Holt testified that he was on his way to a funeral when Howard asked him to change a twenty-dollar bill. Holt claimed that he gave Howard nineteen one-dollar bills and was counting out change for the remaining dollar when the police grabbed him from behind. Holt stated he did not have the pink pills in his hand, but that Detective Norris later retrieved some pink pills off the ground near where appellants were standing. Co-defendant Howard also testified that he asked Holt for change and that he had just received nineteen one-dollar bills when the police arrived. He

---

1. Holt also argues that there was an unreasonable delay between his arrest and arraignment in violation of Super.Ct.Cr.R. 5(a), which requires dismissal of the charges against him. The afternoon following his arrest was consumed by ordinary administrative procedures and a judge *was not available* for arraignment until the following morning. Even if unnecessary delay were to be assumed, appellant seeks a remedy to which he is not entitled. At best, he could move only to suppress evidence gained by reason of the delay. *See Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). Since appellant made no allegation that any evidence procured during the delay was used against him, his claim is without merit.

claimed that he first saw the pink pills in Detective Norris' hand, but did not recall Norris' retrieving the pills from the ground.

The government recalled the officers in rebuttal. Detective Norris testified that appellant Holt was in an "intoxicated state" at the time of his arrest and, shortly thereafter at the police station, Holt appeared to be in a "narcotics stupor" and only partially coherent. Contradicting the defendants, Detective Heane testified that of the $92 seized from Howard, only seven one-dollar bills were recovered. Of the $108 seized from Holt, eight one-dollar bills were recovered.

■ Appellants contend they were erroneously denied the opportunity to contradict Detective Norris' rebuttal testimony. During the cross-examination of Detective Norris, defense counsel produced a copy of the results of a urine test for narcotics performed on Holt the morning following his arrest.[2] Appellants took the position that if the results were negative, it would have been impossible for Holt to have been in a narcotics stupor at any time during the previous twenty-four hour period.[3] They assumed, therefore, that Norris' testimony was erroneous and attempted to cross-examine him with the test results. The trial court refused to allow this line of questioning and held that the relevance of the test could be established only through expert testimony. The court denied appellants' motion for a continuance to locate an expert.

In evaluating appellants' complaints we initially observe that the government's testimony under consideration was of dubious

rebuttal value. Detective Norris' testimony went merely to his impression of Holt's condition at the time of the offense. Its impact on the jury in impeachment of Holt's testimony was rather obscure.[4] As is frequently the case, the unnecessary straining which brought forth the introduction of the questionable testimony immediately generated problems—and this appeal.

Appellants do not frontally challenge the admission of the rebuttal testimony, however. Rather, they contend they had a right to impeach Detective Norris with the test results. Their argument is twofold: First, they contend the refusal of the trial court to allow them to confront Norris with the test results denied them their constitutional right of cross-examination. They next argue that since new matters were injected on rebuttal, they had a right to present surrebuttal testimony.

■ The right to an effective cross-examination is a fundamental part of the right of confrontation guaranteed under the Sixth Amendment. *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931); *Moss v. United States*, D.C. App., 368 A.2d 1131 (1977). The scope and extent of cross-examination is, however, within the sound discretion of the trial court. *United States v. Howard*, 128 U.S. App.D.C. 336, 389 F.2d 287 (1967). Generally, cross-examination is restricted to matters elicited on direct examination. *United States v. Stamp*, 147 U.S.App.D.C. 340, 458 F.2d 759, *cert. denied, Freeman v. U. S.*, 406 U.S. 975, 92 S.Ct. 2424, 32 L.Ed.2d 675 (1972); *Radio Cab v. Houser*, 76 U.S.App. D.C. 35, 128 F.2d 604 (1972). Detective Norris testified only as to his opinion of

---

2. The test results are not part of the record on appeal but from a reading of the trial transcript, we assume for present purposes the results were negative.

3. Appellant Holt contends that the test results should have been furnished to defense counsel under *Brady v. Maryland*, 313 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and that the government knowingly presented false testimony. This unrestrained allegation is without merit. This was not evidence suppressed by the government. The results of the urinalysis were as readily available to defense counsel as

they were to the prosecutor, who, the record indicates, had not even seen the results until they were produced at trial by appellant.

4. The rebuttal testimony was admitted on the theory that a witness may be impeached with regard to his possible drug use at the time of the offense about which he testifies in that the use of drugs affects his capacity to accurately observe or relate the details of the event. *See United States v. Fowler*, 151 U.S.App.D.C. 79, 465 F.2d 664 (1972); *United States v. Kearney*, 136 U.S.App.D.C. 328, 420 F.2d 170 (1969); C. McCormick, Evidence § 45 (2d ed. 1972).

Holt's condition at the time of the offense. He, at no time, had any knowledge of the subsequent test results. We find no abuse of discretion in refusing to admit the test results during the cross-examination of Norris.

■ Appellants assert they should have been allowed to attack Norris' credibility through the testimony of an expert who could have interpreted the test results and established the fallaciousness of Norris' opinion. They rely on Professor Wigmore's comment that when new matters are brought forward in rebuttal, surrebuttal evidence is entitled to be received, without depending upon the court's discretion. 6 J. Wigmore, Evidence § 1874 (Chadbourne rev. 1976). We do not perceive the court's action as amounting to a refusal to hear surrebuttal testimony.[5] Rather, we note that the court declined to allow an interruption in the trial to locate an unidentified expert witness.[6] The matter of continuance is within the trial judge's discretion. *Ungar v. Sarafite*, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). A party seeking continuance to secure witnesses must show "who they are, what their testimony will be, that it will be relevant under the issues in the case and competent, [and] that the witnesses can probably be obtained if the continuance is granted . . .", *Neufield v. United States*, 73 U.S.App.D.C. 174, 179, 118 F.2d 375, 380, *cert. denied, Ruben v. U. S.*,, 315 U.S. 798, 62 S.Ct. 580, 86 L.Ed. 1199 (1941). Appellants were unable to

represent to the court the exact source and substance of the proffered testimony. At various times during the discussion at the bench, defense counsel suggested that a laboratory technician, chemist or pharmacologist could be called to testify. The trial judge responded that no one could give him any reasonable assurance as to "who," "when," or "what he will testify to." The court concluded that the request for a continuance was for the purpose of further investigation, in net effect, and was not an actual proffer of relevant, material testimony. Furthermore, we do not think appellant Holt was "surprised" by the rebuttal testimony. Detective Norris had given substantially the same testimony at a pretrial hearing.

We do not view the decision not to admit the report of the narcotic test and the refusal to grant a continuance during the trial as constituting reversible error. Far more devastating to appellants' case was the rebuttal testimony of another government witness which severely damaged appellants' essential defense that the street transaction simply involved making change for a twenty-dollar bill. Consequently, whether appellant Holt was actually intoxicated at the time of arrest and shortly thereafter in the precinct station and whether, if he was, it was due to narcotics usage, was not, in retrospect, as potent as appellants view it. Accordingly, the judgments appealed from are

*Affirmed.*

---

5. For example, counsel did not request, but we assume the court may have permitted, surrebuttal testimony of an individual who had an opportunity to observe Holt at the time of the offense.

6. The court was highly skeptical that an expert could be found who would testify that Holt could not have exhibited symptoms of narcotics use twenty hours before a urinalysis

showed him narcotic-free. At various times during the lengthy colloquy between the court and counsel, the trial judge noted that the persistence of narcotics in the human body varies with each individual, that the results vary with the type of drug injected (or ingested) and with the time it was injected, and that the test referred to is designed to determine the presence of a number of drugs.