Jose GUZMAN, Appellant,

v.

UNITED STATES, Appellee.

No. 97–CM–830.

District of Columbia Court of Appeals.

Argued Nov. 9, 1999.

Decided March 22, 2001.

David A. Singleton, Public Defender Service, with whom James Klein, Samia Fam, and Yasmin Cader, Public Defender Service, were on the briefs, for appellant.

Amul Thapar, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher, Thomas J. Tourish, Jr., and Julieanne Himelstein, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and STEADMAN, and REID, Associate Judges.

WAGNER, Chief Judge:

Appellant, Jose Guzman, was convicted following a bench trial of misdemeanor sexual abuse in violation of D.C.Code § 22–4106 (1996 Repl.). He argues for reversal on the grounds that the trial court improperly limited cross-examination of the minor complaining witness thereby violating his Sixth Amendment right to confrontation. We conclude that given the cross-examination permitted, the limitations imposed by the trial court did not violate appellant's confrontation rights under the Sixth Amendment and that reversal is not otherwise warranted.

## I. The Trial

### A. Factual Background

The government's case against appellant was based on the testimony of the complaining witness, V.V., who was ten years old at the time of the events which resulted in appellant's conviction. V.V. testified that she was visiting the Guzman household on a Saturday in November 1996, before Thanksgiving.[1] She testified that

---

1. The offense date was November 21, 1996.

According to V.V.'s trial testimony, she had

she went over to a table in the kitchen to get some food, and appellant came up behind her and rubbed and squeezed her buttocks. V.V. testified that appellant whispered in her ear that if she told anyone, he would kill her. According to V.V., appellant asked her if she wanted to come upstairs with him. V.V. testified that there was another adult in the kitchen at the time, Maria (Chela) Guzman, who was on the telephone. She testified that Chela told appellant "that he needed to stop and [t]hat he needed to go upstairs and rest or do something, but get away from [V.V.]." V.V. ran upstairs into the bathroom. After a couple of weeks, V.V. told her mother what happened to her while visiting the Guzman household.[2] V.V. also informed her mother of another alleged molestation committed by appellant's father approximately thirteen days prior to this incident.[3] V.V. and her mother subsequently reported these incidents to the police.

Appellant testified that he never touched or threatened V.V. in any sexual or improper way. He acknowledged that he went into the kitchen some time that evening before going upstairs to bed. Maria Guzman, appellant's sister-in-law, testified that while she was in the kitchen talking on the telephone, V.V. was in the kitchen heating food and that she did not see appellant touch her. She denied telling appellant to go upstairs and leave V.V. alone. Loraina Guzman, V.V.'s godmother

and appellant's sister-in-law, testified that V.V. did not appear to be upset when she picked her up that night for an overnight visit, did not appear to be upset the next morning and said nothing about not being able to sleep.[4]

### B. Cross–Examination of the Complaining Witness

Appellant argues for reversal on the grounds that the trial court improperly limited his cross-examination of the government's sole witness on matters essential to an evaluation of her credibility, in violation of his Sixth Amendment right to confrontation. Specifically, he contends that the court improperly precluded cross-examination of the complaining witness which might have shown that the child was influenced into making a false report against appellant by her mother's statements and questions concerning the incident. In response, the government argues: (1) that the trial court properly limited cross-examination to matters raised on direct examination; (2) that appellant failed to inform the court of his bias theory or to proffer a factual basis for his bias claim; and (3) appellant had an adequate opportunity to develop the child's report about the sexual misconduct. It is necessary to examine in some detail the context in which the pertinent

---

planned to spend the evening with her godparents, Milton and Loraina Guzman, but she had to wait for them at 1907–12th Street, N.W., the home of Milton Guzman's parents, because her godparents were working during the day. At the time, appellant, Jose Guzman, lived at the 12th Street address also.

2. V.V. testified that she was too scared to tell anyone prior to this time. V.V. testified that as a result of the incident that "[she] was changing a lot and ... was always sad, felt hurt." V.V. further testified that she was having bad dreams.

3. This allegation of molestation by appellant's father primarily came out during the cross-examination of V.V. The case against appellant's father was papered separately and had not been tried at the time of this trial.

4. In addition to the above, appellant called his brother, Hilario Guzman, who had no specific recollection of the day in question. Appellant also called Carla Clemons, his employer, who testified about appellant's good character on the job.

rulings of the trial court occurred in order to resolve the issues raised.

During the direct examination of V.V., the prosecutor sought to question the child about her report of the touching incident to her mother. The trial court overruled the objection of defense counsel that this would be a prior inconsistent statement. The child then testified "I told my mother what had happened ... both times, and then she—she started to count slowly." The defense counsel objected, and the trial court sustained the objection as to what the mother did. The prosecutor's subsequent attempts to elicit the mother's reaction and later actions similarly drew objections from defense counsel on the grounds of relevance. At a bench conference to discuss the objections, the prosecutor stated that this evidence was relevant to refute appellant's defense that "the mother is the one who conjured this whole thing up because she has some bias against the [appellant] or his family." [5] However, defense counsel persisted in the objection, explaining that

> the child is being asked to interpret thoughts and thought patterns of a witness who had those thoughts and thought patterns and who is here and available to the government. I don't think that is the appropriate thing through this child to try to describe what reactions her mother is having.

The trial court ruled that the matter should be reserved for rebuttal, if necessary.

During cross-examination of V.V., defense counsel sought to inquire into this same area to which he had objected during direct examination. Specifically, he sought to question V.V. about the mother's questions and reactions when V.V. reported the incident involving appellant, as well as the additional incident that she mentioned in direct examination.[6] In an *in limine* ruling, the trial court specifically precluded defense counsel from asking the

---

5. In opening statement, counsel for appellant had alluded to some possible bias motives, including that V.V.'s mother had obtained a loan from Mr. Milton Guzman and that Loraina Guzman had asked about repayment. Defense counsel went on to suggest in opening statement a motivation for the report of the offense against his client as follows:

> ... is this claim the result of a mother's over reaction to an innocent recounting of a story by a child? Is it motivated in part by a financial concern? Is it a combination of the two? Is it the result of other inappropriate sexual behavior that [V.V.] has been exposed to that's [sic] made everyone much more concerned about innocent behavior?

6. During direct examination, the child referred only briefly to a second incident, stating, "I told my mother what had happened ... both times...." The mention of the two incidents formed the basis for defense counsel seeking to ask about it during cross-examination. Defense counsel made the following proffer concerning the incident which allegedly involved appellant's father:

> Your Honor, this child made two allegations, one of which I will proffer to the court the mother felt was a much more serious—my information is that the mother felt was very serious, and that the mother was most concerned about; that was the result of much of the argument over at that house, and that the government has put forth-and the government knows about this. It was a case they papered, and then got DWIP'd.
>
> * * * *
>
> The government was left with the impression that this child was scared and upset entirely because of Jose Guzman. And, I think that is misleading to the court that that's the only thing that happened to this child.
> I think it puts in context the mother's—to the extent that the government has elicited the mother's reactions, and also the issue of whether or not there was further questioning of the child about other conduct of other people in the household, given this more serious allegation towards someone other than Mr. Guzman.

child what questions her mother asked after she reported the incident concerning the older man, appellant's father. Defense counsel argued that this inquiry went to the child's state of mind and that the court needed to know the questions which prompted the conversation. The government argued that this was the same area of inquiry to which the defense objected on direct examination. Defense counsel responded that if the child had not mentioned that there was another incident, he would not cross-examine about it. The government objected to questioning about other reports of sexual misconduct by others in absence of clear and convincing evidence that the other report was false. The court persisted in its ruling precluding questioning of the child about the mother's statements and comments. However, in response to the defense proffer of the relevance of the inquiry about the other incident, over the government's objection, the court ruled that the defense could cross-examine V.V. concerning the other incident, what she was talking about when she said "both," whether there was another incident, what report was made and what was done as a result of it, whether the child felt they were related, and whether the bad dreams she reported having were related to the other incident.

During cross-examination of V.V., there were a number of times when, in response to objections, defense counsel indicated that she was attempting to explore whether V.V.'s testimony may have been influenced by her mother or other adults. For example, defense counsel asked V.V. "[i]f your mom says that something happened and that it was bad, would you believe her?" In responding to the government's objection, defense counsel explained that it was proper for her to cross-examine on the extent to which the child was influenced by the adults. The prosecutor responded that it had no objection if counsel was questioning about a specific incident relevant to this case. The trial court allowed the question previously posed concerning whether V.V. believed what her mother told her, and added that counsel could then move on to "what the statement is, that presumably the mother said you want to assess." Subsequently, defense counsel questioned V.V. in an attempt to reveal her mother's influence on her account of events, either without objection, or over objection. Over the prosecutor's objection, defense counsel asked if the child's mother told her to tell the investigator that she had reported the sexual assault after only three days, however, V.V. responded that her mother had not told her to say that. Additional questioning along these lines, which is reprinted in the margin, proceeded without objection.[7]

---

7. The cross-examination on this point was as follows:

Q. ... Did you tell the investigators how long it was?
A. No. I let my mother answer that.
Q. [V.V.], isn't what happened is, that you did tell the investigators how long it was, and your mother corrected you and said you were wrong, isn't that right.
A. No.
Q. Didn't you tell the investigators how long you thought it was and your mother told you you were mistaken and that it was only three days.
A. No.

Q. You never said that?
A. No.
Q. But you will agree that after your mother said that, you repeated that to the investigators, that you told your mom three days—that you told your mom three days after this happened, right?
A. I told my mother that wasn't true. I said it was a few weeks, not three days. But she-but my mother said to let her answer that question.
Q. ... What did your mother say?
A. My mother said let her answer the question because sometimes I forget stuff.

## II.

### A. *Legal Principles*

 The right of the accused in a criminal trial to confront and cross-examine adverse witnesses is protected by the Sixth Amendment of the Constitution. *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). The effective use of cross-examination is an important means of testing the government's case and exposing any biases of any witnesses or their motives, if any, for not telling the truth. *See Brown v. United States,* 683 A.2d 118, 124 (D.C.1996) (citations omitted). Thus, " 'bias is always a proper subject of cross examination.' " *Id.* (quoting *Jones v. United States,* 516 A.2d 513, 517 (D.C.1986)). The right of cross-examination is not without limits, however. It is well-settled that "[a] trial judge is vested with wide discretion in controlling the cross-examination of witnesses, and does not abuse that discretion by limiting cross-examination to those matters that are raised by the direct examination." *Brooks v. United States,* 536 A.2d 1091, 1093 (D.C.1988) (citing *Holt v. United States,* 381 A.2d 1388, 1390 (D.C.1978)) (internal citation omitted). The trial court is also vested with discretion in controlling bias cross-examination. *See Brown,* 683 A.2d at 124 (D.C.1996) (citing *Ford v. United States,* 549 A.2d 1124, 1127 (D.C. 1988)). Restriction on cross-examination may be imposed "within reasonable limits to avoid such problems as harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repeti-

tive or only marginally relevant .... [or] where the prejudicial effect of the proffered evidence outweighs its probative value." *Id.* (quoting *Elliott v. United States,* 633 A.2d 27, 32 (D.C.1993)). Where a proper foundation has not been laid for bias cross-examination, the trial court may exercise its discretion to preclude the inquiry. *See id.* (citing *Ray v. United States,* 620 A.2d 860, 862 (D.C.1993) (other citation omitted)). A proper foundation includes a

> proffer [of] some facts which support a genuine belief that the witness is biased in the manner asserted.... In addition, the attorney must proffer facts sufficient to permit the trial judge to evaluate whether the proposed question is probative of bias.

*Id.* at 124–25 (quoting *Jones, supra,* 516 A.2d at 517) (other citations omitted).

### B. *Analysis*

Appellant argues that he was precluded from developing the defense theory that V.V. was never assaulted by appellant, but her mother, who was angry and distraught upon learning of the assault involving appellant's father, pressured and influenced the child to accuse appellant of something he did not do. He contends that he should have been permitted to elicit the questions and statements that the mother made before V.V. reported the incidents in order to expose V.V.'s bias resulting from the mother's undue influence. The government contends that appellant failed to explain his bias theory in the trial court or to proffer a factual foundation to support his bias claim.

Q. ... Is your mother right?

\* \* \* \*

A. Yes.
Q. Does your mother help you remember stuff?
A. (Shakes head)

The prosecutor objected, but the court overruled the objection, and defense counsel proceeded with questioning.
Q. When you forget things, will your mother remind you?
A. Yes.

■ The foundational requirement to probe for bias is reasonably lenient. *See Carter v. United States,* 614 A.2d 913, 919 (D.C.1992). We have said that "[a]lthough an attorney attempting to show a witness' bias may not ask questions that are 'totally groundless' . . . a question based on a 'well reasoned suspicion' rather than an 'improbable flight of fancy' is permissible." *Id.* (quoting *McGrier v. United States,* 597 A.2d 36, 44–45 (D.C.1991) (citations omitted) (internal quotations omitted)). In order to overcome an objection to a question posed to expose bias, the questioner must proffer facts sufficient to show that the witness is biased in the manner asserted and to allow the trial court to determine whether the question is probative of bias. *Brown, supra,* 683 A.2d at 124–25 (citation omitted). The government contends that appellant failed to meet that standard.

■ Appellant concedes that trial counsel never used the word "bias," when discussing questions challenged or his proposed lines of inquiry. However, he contends that trial counsel adequately explained his bias theory using synonymous terms. Specifically, he points out that counsel explained that she was seeking to establish that V.V.'s allegations resulted from her mother's influence, pressure and suggestion. The term "bias" is used in the " 'common law of evidence' to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party." *United States v. Abel,* 469 U.S. 45, 52, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984). To be probative in assessing a witness' credibility, the bias need not be personal for or against a party; other motives to fabricate fall within the doctrine. *Ford v. United States,* 549 A.2d 1124, 1125 n. 2 (D.C.1988) (citing *Van Arsdall, supra,* 475 U.S. at 680, 106 S.Ct.

1431) (other citations omitted). Proof of pressure and undue influence by a mother upon her child which might impede his or her ability to provide an impartial account of events is probative of bias in this context. It is in light of these considerations that we review the record to determine whether appellant met the foundational requirements to pursue his bias theory. When counsel made clear, as she did with these lines of inquiry, that she sought to demonstrate that V.V.'s testimony resulted from the mother's influence, the trial court allowed the questioning, sometimes over the prosecutor's objections.

Appellant made far less clear the basis for the area of inquiry about which he complains primarily on appeal. During this questioning, he sought to elicit through V.V. what her mother asked her about the report of a sexual assault by the elder Mr. Guzman or by other people in the household. A review of the record fails to show that counsel made clear her theory of V.V.'s bias which would be exposed by requiring her to recount her mother's questions or comments about her report of misconduct by others beyond the limits permitted by the court. In resolving the questions raised, it is helpful to understand the context in which the court made rulings in this area.

Defense counsel indicated that since the child's emotional reaction had been brought out on direct, she "should be allowed to inquire as to whether or not this incident or the earlier incident was more upsetting." She further explained that the earlier incident with the older person was more serious and might explain the child's "heightened sensitivity to what may have been innocent conduct that happens a week later." The court ruled that the defense could inquire about the other incident, whether they were related to the bad

dreams, and how she felt following this incident. Counsel pressed to be allowed to probe further, stating that she intended to include in the cross-examination

> the kinds of questions her mother asked her after she told her mother about what the older man had do[ne]. And I expect that will elicit that she asked questions about everyone else in the household, or anything that anybody else had ever done.

This proposal prompted the government's motion *in limine* to preclude this line of inquiry concerning an offense not on trial. Defense counsel responded that "[i]t goes to the ... state of mind of the child, the effect it had on the child." The court then essentially repeated its earlier rulings permitting inquiry about the child's state of mind and the effect of the other incident which occurred about the same time.[8] Defense counsel continued to explain the need to question V.V. about both incidents, since she had mentioned "both" during direct-examination. The prosecutor correctly noted that the child had mentioned "both" in direct-examination, but had not elaborated any further on the other incident. The court ruled that defense counsel could inquire about both incidents as follows:

> I am going to permit you to ask about both—when she said both, what was she talking about.... What was in her mind when she said both. You may ask her, if you want to ... whether those bad dreams you talked about, are they related to that second incident she is talking about.

Counsel then asked if she was precluded from asking V.V. "[w]hat questions her

mother asked of her after she reported the incident about the older man," and the court ruled that it was. Counsel protested that without knowledge of the questions that prompted the conversation, a misleading impression would be left and that because the report of another incident had come out, defense counsel should be "entitled to elicit the interaction that led to the report." The court repeated its ruling that counsel would be permitted to question the witness about the report she made, what was done as a result and the relationship to her dreams.

Appellant argues that during this discussion, he fairly informed the trial court of the substance of his bias theory, *i.e.*, that V.V.'s allegation resulted from the influence, suggestion and pressure from the mother. He points out the two complaints she made, including the one against him, and his explanation that eliciting the mother's questions would show the child's state of mind and the effect it had on the child. In context, it is arguable that counsel's proffer during this discussion adequately alerted the court that eliciting the mother's questions was intended to show the mother's bias which, in turn, influenced the child. What comes through prominently in the discussion is that there were two incidents bearing upon the child's emotional reaction, one involving appellant and one involving the elder Mr. Guzman, which counsel wanted to explore. The court allowed inquiry into these areas.

■■■ Assuming without deciding that defense counsel's proffer adequately informed the court that the proposed inquiry of V.V. about her mother's questions, particularly concerning sexual misconduct by

---

8. The court stated in its ruling:
 ... the defense may inquire about the state of mind [V.V.] has already testified about on direct, about dreams and so forth, and may ask her whether she was involved in some

other incident around the same time she was having those dreams, and if she has any reason to think the dreams had anything to do with that incident, if that's what you want to do.

others, was intended to elicit bias (*i.e.*, that the mother influenced the child to make a false report), we are not persuaded that the preclusion of testimony in this limited area resulted in reversible constitutional error. An accused's constitutional right to cross-examine a witness and present a defense is not implicated in every trial court determination to limit the scope of cross-examination. *Clark v. United States*, 639 A.2d 76, 82 (D.C.1993). "If the issue is merely collateral, or where ample cross-examination has already been allowed or evidence admitted on a particular issue, trial court curtailment of the defendant's presentation does not implicate the defendant's Sixth Amendment rights, and we apply the less stringent test for harmless error set forth in *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)." *Id.* In this case, appellant had the opportunity to question V.V. about her mother's influence in connection with the accusation she made against appellant. During cross-examination, V.V. admitted that she believed her mother when she told her something and that her mother did not lie to her. The trial court ruled that defense counsel would be permitted to question V.V. further about what statement of the mother's she sought to assess in this connection. Counsel then elicited from V.V. that her mother gave a different story to the investigator about how soon V.V. reported the incident; that V.V.'s mother told her to let her answer questions about the events because V.V. forgets things; and that V.V. acknowledged that she is forgetful. Within the scope of the court's ruling, defense counsel was not precluded from further inquiring about whether the mother suggested that she make a false report about appellant, whether she thought it neces-

sary to report that more than one person was involved, and whether she reported the incident independent of anything that her mother said. The court's ruling also allowed the defense to explore the two incidents and the effects that the earlier one might have had on the witness' state of mind, as requested. Thus, the trial court's ruling did not preclude all inquiry into appellant's bias theory. Indeed, appellant elicited some of the evidence which he thought supported the theory that the mother might have had some influence over the child. "Constitutional error will be found only when 'the trial court's rulings prohibited *all* inquiry into the possibility of bias under [the] defendant's theory.'" *Gardner v. United States*, 698 A.2d 990, 997 (D.C.1997). This is not such a case, and we are persuaded that the cross-examination allowed by the trial court satisfied Sixth Amendment requirements.

■ Although no constitutional violation occurred, we must determine whether the trial court abused its discretion in limiting cross-examination and, if so, whether reversal is required. *Gardner, supra,* 698 A.2d at 998 (citing *Roundtree v. United States*, 581 A.2d 315, 322–23 (D.C.1990)). Reversal is warranted only if prejudice results from the improper ruling. *Id.* The trial court's ruling excluding the mother's side of the conversation appears to be based upon two grounds: (1) the court's perception that the evidence was hearsay; and (2) the questions were outside the scope of the direct-examination, which was restricted on the subject during direct-examination because of appellant's objection.[9] Out-of-court statements are not hearsay if used for a purpose other than the truth of the matter asserted. *See Freeland v. United States*, 631 A.2d 1186, 1190 (D.C.1993). Such statements, if rele-

---

9. The court's reasoning, although not explicitly stated, is implicit from the context of the discussion of the objections and the court's rulings and comments thereon.

vant, may be properly admitted to show the impact upon, or state of mind of the hearer. *See id.* Therefore, exclusion on a hearsay ground alone would be error. However, it is not improper for the trial court to limit the scope of the cross-examination to matters raised on direct-examination. *Brooks, supra,* 536 A.2d at 1093 (citing *Holt, supra,* 381 A.2d at 1390). In this case, it was appellant's objection which resulted in the court precluding the prosecutor from eliciting on direct-examination of V.V. what the mother said to her when she reported the assaults. Under these circumstances, it can not be said that the trial court abused its discretion in limiting appellant's inquiry in this area to the scope of the direct-examination upon which appellant had insisted.

 However, even assuming that the trial court abused its discretion in limiting cross-examination of V.V. insofar as what her mother said when V.V. reported the incidents, we find no prejudice which would warrant reversal. The defense counsel had considerable leeway to explore the claimed theory of bias, which counsel did. Defense counsel had the opportunity to call, but did not call the mother, whose statements she contends might have been crucial to the case. Failure to call a witness crucial to one's case can be considered inconsistent with assertions of prejudice resulting from the absence of information which the witness could have provided. *Brooks, supra,* 536 A.2d at 1094. On this record, we are satisfied that reversal is not required.

For the foregoing reasons, the judgment appealed from hereby is

*Affirmed.*