Paul COLES, Appellant,

v.

UNITED STATES, Appellee.

No. 00–CF–1570.

District of Columbia Court of Appeals.

Submitted April 11, 2002.
Decided Oct. 10, 2002.

Brenda C. Wagner, Washington, DC, appointed by the court, filed a brief for appellant.

Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher, Elizabeth Trosman, and Janet E. Albert, Assistant United States Attorneys, filed a brief for appellee.

Before SCHWELB and RUIZ, Associate Judges, and KING, Senior Judge.

SCHWELB, Associate Judge:

After a jury deadlocked at his first trial, Paul Coles was retried on charges of

armed robbery[1] and possession of a firearm during the commission of a crime of violence (PFCV)[2] relating to the robbery at gunpoint of Redoduane Abderrafe. The jury at his second trial found Coles guilty on both counts, and he now appeals. Coles' primary contention is that the trial judge committed reversible error by restricting Coles' cross-examination of a prosecution witness. We disagree and affirm.

## I.

### THE EVIDENCE

At Coles' trial, the prosecution presented evidence which, if credited, established that late at night on July 30, 1997, two men robbed Abderrafe at gunpoint as he walked down a street in Georgetown shortly after he completed his work shift as a waiter at a local restaurant. After the robbers took the tips that Abderrafe had earned, one of the men ordered him to "[g]o—don't turn your back. Just go straight." The two men then fled on foot. Abderrafe continued to walk as instructed, but almost immediately he encountered Officer Joseph Thomas of the Metropolitan Police Department. Abderrafe told Officer Thomas that he had been robbed, and he described one of the two robbers to the officer as "not too tall, not too short" and as wearing "tan military pants and [a] white shirt." Based on this information, Officer Thomas broadcast a lookout over the police radio.

Several police officers working in the Georgetown area monitored the broadcast. After pursuing several other leads, they

spotted and began to chase a man who discarded a "speed loader," a wallet, a black stocking cap, and some personal documents shortly before he was apprehended. The man turned out to be Paul Coles, the appellant in this case. Officers also recovered a handgun which Coles had allegedly dropped earlier in the chase.

On July 22, 1998, a grand jury returned a nine-count indictment against Coles, charging him with involvement in three separate robberies, one of which was the robbery of Mr. Abderrafe. Coles' first trial was held before Judge Rhonda Reid Winston from October 5 to October 21, 1999. The jury found Coles guilty of unlawful possession of ammunition in connection with the Abderrafe robbery, but deadlocked on the armed robbery and PFCV charges.[3] We affirmed the conviction for ammunition possession in *Coles v. United States*, No. 99–CV–1017, Memorandum Opinion and Judgment (D.C. March 6, 2001).

From October 11 to October 13, 2000, a second jury trial was held before Judge Natalia M. Combs Greene with respect to the charges of armed robbery and PFCV. The jury at the second trial found Coles guilty on both counts. This appeal followed.

## II.

### THE ATTEMPTED IMPEACHMENT FOR BIAS

■ The only issue raised by Coles on appeal which merits plenary consideration is whether the trial judge erred by limiting the cross-examination of Kurt Goodwine, a witness for the prosecution.[4] We discern

1. D.C.Code §§ 22–2901, –3202 (1996), recodified as D.C.Code §§ 22–2801, –4502 (2001).

2. D.C.Code § 22–3204(b), recodified as D.C.Code § 22–4504(b) (2001).

3. Coles was acquitted of armed robbery and related weapons charges in relation to the other two incidents that were charged in the indictment.

4. Coles' remaining claims warrant little discussion. He argues that his convictions for

no legal error or abuse of discretion. In our view, the limitation of which Coles complains pertained to a matter of very little, if any, probative value, and its exclusion was justified by its potential for distracting the jury from the issue at hand. At the very least, the trial judge could reasonably so conclude.

### A. *Background.*

During the prosecution's case-in-chief, Goodwine testified that he had sold defendant Coles a Smith and Wesson handgun, as well as ammunition and a speed loader, when the two men were employed by the Department of the Navy approximately five years before the trial. Goodwine identified Government's Exhibit No. 2, by its serial number, as the weapon that he. had sold to Coles. Exhibit No. 2 was the handgun that Coles had allegedly dropped during the officers' pursuit of him. On cross-examination, Goodwine acknowledged that he had no documentation of the sale of the handgun to Coles, and he was unable to recall either the precise date of the transaction or the exact amount paid to him by Coles.

Coles' attorney then attempted to cross-examine Goodwine regarding an employment discrimination complaint that Coles had allegedly filed in January 1999 against Goodwine's superior at the Navy Department. The judge inquired as to the relevance of the question, and counsel proffered that the proposed line of inquiry would demonstrate that Goodwine was biased against Coles. Counsel explained that Goodwine had been called as a management witness by the Department of the Navy in an administrative hearing on Coles' complaint. Subsequently, in January 2000, Goodwine had stated in an affidavit that Coles "had a deleterious effect on morale of the section because none of us could understand his motivation and we could all see where this was heading." [5]

The judge indicated that she did not see how the discrimination complaint provided Goodwine with a motive to fabricate evidence falsely implicating Coles in an armed robbery. She pointed out that if the proposed questioning was permitted, the prosecutor would have the right to

---

armed robbery and PFCV merge, but we have previously rejected this contention. *See Hanna v. United States*, 666 A.2d 845, 856 (D.C. 1995) ("The [PFCV] count does not merge with ... the armed robbery count"); *Thomas v. United States*, 602 A.2d 647, 650 (D.C.1992) ("[T]he Council [of the District of Columbia] did not intend ... the offense [of PFCV] to merge with an offense subject to the enhanced penalty provision of [D.C.Code § 22–]3202.").

Coles also complains that, in reinstructing the jury with respect to the elements of armed robbery, the trial judge omitted the definition of the words "carried the property away." The element itself was not omitted from the reinstruction, and the judge had previously instructed the jury as to the meaning of the language in question.

Coles' attorney did not object to the reinstruction. Rule 30 of the Superior Court's

Rules of Criminal Procedure provides in pertinent part:

> No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection.

Under these circumstances, we review only for plain error, *Johnson v. United States,* 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), and find none.

5. We cannot agree with our dissenting colleague that the quoted language rises to the level of an "express[ion] [of] animus" against Coles. *Post* at 491. Indeed, in our view, phrases like "animus" and "demonstrabl[e] bias," *id.* at 493, overstate the reality when one considers that we are dealing here with an alleged motive for falsely associating Coles with an armed robbery. *See infra,* pp. 490–91.

bring out the witness' position. Coles' attorney acknowledged that this was so: "Oh, no question." The judge then explained that she did not propose to try what she regarded as a collateral matter (namely, the rights and wrongs of Goodwine's criticism of Coles in connection with the discrimination case):

> I'm not going to try that [discrimination] case. I think, you know, bias is always relevant, that is true, but given when this affidavit was given, the circumstances under which it was given, an administrative action where this witness was just called as a witness, that he was not alleged to have been one of the discriminators or that he took any action against your client, I don't see how that is probative of bias in terms of—I'm not going to turn this into some discrimination trial.

Coles' attorney then argued that Goodwine's motive was to "curry favor with his boss." The judge disagreed and declined to permit the proposed cross-examination.

### B. *Legal Analysis.*

■ A criminal defendant's right to cross-examine prosecution witnesses is protected by the Confrontation Clause of the Sixth Amendment. *Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Lawrence v. United States,* 482 A.2d 374, 376 (D.C.1984). That right, however, is not unlimited. *Reed v. United States,* 452 A.2d 1173, 1176 (D.C. 1982), *cert. denied,* 464 U.S. 839, 104 S.Ct. 132, 78 L.Ed.2d 127 (1983). "[D]espite the Sixth Amendment, the trial court has broad discretion to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Grayton v. United States,* 745 A.2d 274, 280–81 (D.C.2000) (citations and internal quotation

marks omitted). "A proposed line of questioning may, and should, be disallowed if the trial court concludes that its probative value is substantially outweighed by the danger of unfair prejudice," *id.* at 281; *see also Mercer v. United States,* 724 A.2d 1176, 1184 (D.C.1999), or if the inquiry may divert the attention of the jury from the issue at hand. The trial judge has "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on cross examination," *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), for she has "the responsibility for seeing that the sideshow does not take over the circus." ED-WARD W. CLEARY, McCORMICK ON EVIDENCE § 40, at 89 (3d ed.1984).

■ In the present case, the proposed cross-examination was designed to impeach Goodwine for bias:

> Bias is a term used in the "common law of evidence" to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest.

*United States v. Abel,* 469 U.S. 45, 52, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984). Bias is "always relevant," *Hollingsworth v. United States,* 531 A.2d 973, 979 (D.C.1987), and "[t]he Supreme Court has established that the refusal to allow *any* questioning about facts indicative of bias from which the jury could reasonably draw adverse inferences ... is an error of constitutional dimension, violating the defendant's rights secured by the Confrontation Clause." *Ford v. United States,* 549 A.2d 1124, 1126 (D.C.1988) (emphasis in original) (citing *Van Arsdall, supra,* 475 U.S. at 678–79, 106 S.Ct. 1431). Here, the judge allowed

no cross-examination regarding Goodwine's purported bias, which was alleged to have stemmed from Coles' discrimination complaint. But

> the party posing the question must proffer to the court some facts which support a genuine belief that the witness is biased in the manner asserted, *that there is a specific personal bias on the part of the witness*, and that the proposed questions are probative of bias.

*Barnes v. United States*, 614 A.2d 902, 905 (D.C.1992) (emphasis added) (quoting *Porter v. United States*, 561 A.2d 994, 996 (D.C.1989)).

■■■■ "The trial judge ... has discretion in determining whether particular evidence is relevant to bias or motive." *White v. State*, 324 Md. 626, 598 A.2d 187, 194 (1991) (quoting McCormick on Evidence, *supra*, § 40, at 87). Indeed, the trial court has "a great deal of discretion" in making this determination. *Id.* "[T]he burden of showing the relevance of particular evidence to the issue of bias rests on its proponent." *Chambers v. State*, 866 S.W.2d 9, 26–27 (Tex.Crim.App.1993). Moreover, "not everything tends to show bias, and courts may exclude evidence that is only marginally useful for this purpose." *State v. Lanz–Terry*, 535 N.W.2d 635, 640 (Minn.1995). "Evidence tending only slightly to prove bias may be admitted; however, rejecting such evidence is within the discretionary power of the trial court." *State v. Jackson*, 340 N.C. 301, 457 S.E.2d 862, 870 (1995).

"Proportionality is of consummate importance in judicious adjudication," *Allen v. United States*, 603 A.2d 1219, 1227 (D.C.1992) (en banc), and, as the foregoing authorities demonstrate, the principle that the preclusion of all cross-examination regarding a witness' possible bias violates the Constitution must be applied with a measure of common sense. Trivial motivations are insufficient. If Jones accidentally steps on Smith's toe and momentarily inflicts a little pain on Smith's corn, this might reasonably provide a motive for Smith to curse Jones or even to push him, but no reasonable person would view it as a motive to throw acid into Jones' eyes or to shoot Jones through the heart. The present case may not be as extreme as the foregoing hypothetical, but an expression of dissatisfaction with Coles' role in the discrimination proceeding in which Goodwine was merely a witness reasonably appeared to the trial judge to provide a very unpersuasive motive indeed for helping to frame a man for armed robbery by fabricating a five-year-old sale of a handgun.[6] Although the judge did not

---

6. According to our dissenting colleague, it was unnecessary for the defense to show that "the proffered bias was of a magnitude which would cause Goodwine to assist in 'framing' appellant." *Post*, p. 494. But surely an impartial jury could not rationally conclude that Goodwine *mistakenly* believed that he had sold Coles a handgun, or that Goodwine believed that he knew the serial number of the weapon when he did not. On this record, Goodwine was either telling the truth or he *intentionally* framed Coles for an armed robbery, and the judge reasonably concluded that Coles had not proffered evidence of the kind of bias which could reasonably lead the jury to believe that such deliberate framing had occurred.

Judge Ruiz also suggests, *id.*, that reversal is warranted even though there was no "need to doubt that Goodwine sold *a* gun to appellant at some time while they worked together for the Marine Corps." (Emphasis in original.) Her hypothesis seems to be that although Coles purchased a weapon from Goodwine, Coles' discrimination suit could have so angered Goodwine that he would provide a false serial number for the weapon he sold to Coles just to inculpate Coles in an armed robbery. We are satisfied that this possibility is sufficiently remote to ensure that no impartial jury would reasonably believe it, and the judge could reasonably so conclude.

express herself in precisely these terms, we are satisfied that this is what she was driving at. To articulate the point by resort to this court's language in *Barnes, supra*, the defense proffer did not amount to the "specific personal bias," 614 A.2d at 905, required to lay a foundation for cross-examination for bias. The proffer of bias was marginal at best, and thus quite inadequate to require the judge to permit the proposed line of inquiry. *Cf. Lanz–Terry, supra*, 535 N.W.2d at 640; *Jackson, supra*, 457 S.E.2d at 870.

Moreover, the situation before the trial judge was rife with the potential for confusion of the issue and for distraction of the jury from the question whether Coles was innocent or guilty:

> Impeachment is not a dispassionate study of the capacities and character of the witness, but is regarded in our tradition as an *attack* upon his credibility. Under our adversary system of trials the opponent must be given an opportunity to meet this attack by evidence sustaining or rehabilitating the witness.

McCormick on Evidence, *supra*, § 49, at 115 (emphasis in original). Accordingly, if the trial judge had permitted the line of inquiry proffered by the defense, the prosecution would have had the right to rehabilitate Goodwine, and would presumably have done so by attempting to show that his comments about Coles were accurate and justified and did not reflect bias against the defendant. The inquiry would then have been diverted from the question of Coles' innocence or guilt to the merits of a collateral dispute between Goodwine and Coles which arose in the context of a discrimination case. It is no secret that allegations of unlawful discrimination tend to capture one's attention, and the proposed cross-examination would have had a significant potential for distracting of the jury. Under these circumstances, we perceive no legal error or abuse of discretion on the trial judge's part.[7]

## III.

## CONCLUSION

For the foregoing reasons, Coles' convictions are hereby

*Affirmed.*

RUIZ, Associate Judge, dissenting:

Under well-established principles of law, once a good faith proffer of bias is presented to the trial court, the jury should learn of a witness's bias, unless the probative value of the evidence is "substantially outweighed" by the risk of undue prejudice. *See Clayborne v. United States*, 751 A.2d 956, 962–63 (D.C.2000). In this case, defense counsel proffered that Kurt Goodwine, an important prosecution witness in the government's second attempt to secure Paul Coles's conviction for armed robbery, was biased against Coles. Goodwine testified that he had sold to Coles the very weapon used in the armed robbery. The proffer of bias was supported by a sworn affidavit, signed by Goodwine only several months before he testified against Coles, in which the witness expressed his animus against appellant. Viewed through the proper legal lens—which the trial court did not do—the proffer was sufficient, but the

---

7. The judge evidently thought it implausible, and so do we, that Goodwine would fabricate the sale of a handgun five years earlier in order to retaliate in such a devastating way against Coles' actions in the discrimination case. We do not read the dialogue between court and counsel quoted in footnote 1 of the dissent as being based primarily on the lapse of time since the alleged sale. On the contrary, the notion that Goodwine would invent so old a transaction was simply one of several factors showing the improbability of the defense's entire "motive to fabricate" theory.

trial judge precluded the cross-examination as delving into a "collateral matter," without assessing prejudice. In light of defense counsel's proffer and the importance of the allegedly biased witness, the jury, not the trial judge, should have determined what weight, if any, to afford Goodwine's testimony in light of the bias he had against appellant. *See id.* at 963 ("[P]robative evidence of bias, like probative evidence generally, should not be excluded because of 'crabbed notions of relevance or excessive mistrust of juries.'") (quoting *Allen v. United States,* 603 A.2d 1219, 1224 (D.C.1992) (en banc)).

"[T]he right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." *Pointer v. State of Tex.,* 380 U.S. 400, 405, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) (holding the Confrontation Clause applicable to the states through the Fourteenth Amendment). Of particular importance to this case is the recognition that "a proper and important function of the constitutionally protected right of cross-examination" is the "exposure of a witness' motivation in testifying." *Delaware v. Van Arsdall,* 475 U.S. 673, 678–79, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). So crucial to the protection of a defendant's constitutional rights is this aspect of courtroom examination, that it has served as the impetus for our persistent declarations that "bias is *always* a proper subject of cross-examination." *Scull v. United States,* 564 A.2d 1161, 1165 (D.C.1989) (citing *Springer v. United States,* 388 A.2d 846, 855 (D.C. 1978) (emphasis added)). "Bias" encompasses both a witness's personal bias for or against a particular party and the witness's motive to lie. *See, e.g., McCloud v. United States,* 781 A.2d 744, 752 (D.C. 2001).

The majority, recognizing this well-established principle and conceding that the trial judge "allowed *no* cross-examination regarding [the witness's] purported bias" against appellant, nevertheless decides that the trial judge did not err, finding justification in the oft-repeated maxim that a trial court retains broad discretion to impose "reasonable limits" on cross-examination. *See, e.g., Brown v. United States,* 683 A.2d 118, 124 (D.C.1996). While this, as a general proposition, is true, it is just as certain that "the permissible scope of cross-examination 'must be limited with the utmost caution and solicitude for the defendant's Sixth Amendment rights.'" *Springer,* 388 A.2d at 855 (quoting *United States v. Houghton,* 554 F.2d 1219, 1225 (1st Cir.1977)). "The broad discretion afforded the trial court as to the extent of cross-examination 'cannot ... justify a curtailment which keeps from the jury relevant and important facts bearing on the trustworthiness of crucial testimony.'" *Bennett v. United States,* 797 A.2d 1251, 1257 (D.C.2002) (quoting *McCloud,* 781 A.2d at 752).

In order to balance the guarantee of the Confrontation Clause, which is violated when there is a "refusal to allow *any* questioning about facts indicative of bias from which the jury could reasonably draw adverse inferences of reliability," *Brown,* 683 A.2d at 124, and the firmly embedded postulate that the "right to cross-examination 'is subject to reasonable limits imposed at the discretion of the trial judge,'" *id.* (quoting *Scull,* 564 A.2d at 1164), we have established a basic foundational requirement before permitting inquiry about a witness's possible bias or partiality. When opposing counsel objects to bias cross-examination, the examiner must proffer to the court "the basis for her genuine belief that her questioning is well-grounded and hence that the answers may be probative of bias." *See Clayborne,* 751 A.2d at 963

(citing *Jones v. United States*, 516 A.2d 513, 517 (D.C.1986)). This requirement is "flexible as well as lenient." *Id.* When this foundational requirement is met, the trial court's broad discretion to exclude such testimony is necessarily diminished, and it is only where a proper foundation for such inquiry has not been laid that a trial court may preclude it in its entirety. *See Guzman v. United States*, 769 A.2d 785, 790 (D.C.2001) (citing *Ray v. United States*, 620 A.2d 860, 862 (D.C.1993)).

## I. The Proposed Cross–Examination

### a. The Proffer of Bias

Defense counsel met his initial burden in proposing to examine a witness for partiality by providing a good faith basis to believe that Goodwine was demonstrably biased against Coles. Counsel not only communicated to the trial judge his well-founded belief that the prosecution witness was biased against Coles because he had filed a discrimination suit against the Navy, where Goodwine worked at Marine Corps Headquarters, but also produced documentary evidence (the witness's affidavit) which corroborated that belief. Though not all lawsuits against an employer would necessarily sour an employee against the plaintiff, it was clear that this one did. In an affidavit filed in an administrative proceeding concerning the charge of discrimination, Goodwine stated that, "[Coles] had a deleterious effect on the morale of the section because none of us could understand his motivation and we could all see where this was heading." The lawsuit, according to counsel's proffer, implicated Goodwine's supervisor, which possibly gave Goodwine (who had been called as a management witness in the administrative proceeding) further motivation to testify against Coles in order to curry favor with his boss. Presented with this proffer, the trial court should have excluded the cross-examination only upon strong indication that the brief line of questioning requested regarding Goodwine's feelings towards Coles would have confused the jury, unduly harassed the witness, or been otherwise so prejudicial as to justify impairing Coles's constitutional right to confront the witness against him. *See Guzman*, 769 A.2d at 790; *Clayborne*, 751 A.2d at 963; *see also Davis v. Alaska*, 415 U.S. 308, 319, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (holding that petitioner's right of confrontation was paramount to state's policy of protecting juvenile offenders and any embarrassment to witness).

The trial judge denied defense counsel's request to cross-examine Goodwine based on her erroneous belief that the foundational requirement had not been met. More precisely, the trial judge found it difficult to believe that the discrimination suit brought by appellant against Goodwine's employer would have given Goodwine the motive to "perjure himself" about the sale of the gun to Coles. The majority also seems to believe that Coles's suit against the Navy was "marginal" because it provided "a very unpersuasive motive indeed for helping to frame a man for armed robbery by fabricating a five-year-old sale of a handgun." See *ante* at 490–91. They miss two crucial points, one of perspective and another of degree. The relevant question is not whether the judge believes Goodwine had sufficient reason to fabricate an outright untruth in testifying that he sold the gun used in the armed robbery to Coles, but whether Goodwine's evident animus against Coles should have been revealed to the jury so that it could consider whether "the relationship between a party and a witness … might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party." *Guzman*, 769 A.2d at 791 (quoting *United States v. Abel*, 469

U.S. 45, 52, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984)). There was no requirement for defense counsel to prove the proffered bias was of a magnitude which would cause Goodwine to assist in "framing" appellant. Nor was there even the need to doubt that Goodwine sold *a* gun to appellant at some time while they worked together for the Marine Corps. But with the knowledge that Goodwine held a bias against appellant for bringing a lawsuit against his employer which Goodwine felt "had a deleterious effect on the morale of [his] section," a reasonable jury might have more carefully scrutinized the veracity of Goodwine's statement that he could identify the weapon used in the armed robbery as *the* gun he sold Coles several years earlier because he remembered its serial number. "The exposure of bias may be a crucial determinant in the jury's assessment of the trustworthiness of a witness." *Clayborne*, 751 A.2d at 962 (internal quotation and citations omitted). It is not for us to speculate as to whether the jury would have accepted appellant's line of reasoning had defense counsel been permitted to fully present it; rather, "the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [the witness's] testimony." *Davis*, 415 U.S. at 317, 94 S.Ct. 1105.

### b. Abuse of Discretion

Even putting aside the sufficiency of Coles's proffer, the trial judge erred in not allowing the requested cross-examination because her decision was primarily based upon consideration of an irrelevant and improper factor. Defense counsel proffered that, in January of 1999, appellant had filed a discrimination claim against his former employer (for whom Goodwine still worked), and had produced an affidavit that Goodwine had signed in January 2000—the same year he testified in this case—in relation to that employment discrimination claim. At a bench conference, the trial judge erroneously focused on the date of Goodwine's affidavit in relation to the alleged sale of the gun.[1] The fact that Goodwine may have sold the gun to appellant five years or more before Coles filed the action against the Navy had no bearing on whether Goodwine held a bias against

---

1. The Court: When was the suit filed?

   . . .

Defense Counsel: In January of 1999.

The Court: So it was how long after this incident [the sale of the gun]?

Defense Counsel: The man is testifying today.

   . . .

The Court: The suit was filed in '99?

Defense Counsel: Right, but he's testifying today.

The Court: And so?

Defense Counsel: So it goes to bias. I mean -

   . . .

The Court: How is this person involved? Is he alleged to have been the discriminator?

Defense Counsel: No, but he did—he did make some statements stating that—his exact words are Mr. Coles—"He had a deleterious effect on the morale of the section because none of us could understand his motivation and we could all see where this was heading." That's where the bias is involved. He's stating that Mr. Coles' actions contributed to -

The Court: When was the affidavit?

Defense Counsel: The affidavit, January 14th of 2000. That's when he signed it.

   . . .

Prosecutor: I believe that Mr. Goodwine was called as a management witness by the Department of the Navy in an administrative proceeding.

The Court: Well, *I don't see how that would give this witness a motive to favor the Government and to lie about a sale that happened several years earlier. A suit that is brought and an affidavit that's given in 2000, I don't see how that would—it's going to try some collateral matter.* (emphasis added).

appellant for initiating that civil action at the time Goodwine testified against him in the criminal trial. To be the proper subject of inquiry, an incident giving rise to bias need only precede the testimony given by the person who is allegedly biased. *See Best v. United States,* 328 A.2d 378, 381 (D.C.1974). The closer the temporal relationship between the incident giving rise to bias and the trial, the more probative. The majority does not acknowledge that the trial judge incorrectly analyzed the proffer by focusing on the temporal relationship between the witness's purported sale of the gun five years before his testimony at the criminal trial, a relationship that was irrelevant to appellant's proffer that the *same year* that Goodwine testified against Coles in the criminal trial he also swore in an affidavit that Coles "had a deleterious effect on the morale of the section" of the Navy of which Goodwine was a part. Thus, the trial court erred because it "failed to consider a relevant factor," and "relied upon an improper factor." *See Johnson v. United States,* 398 A.2d 354, 365 (D.C.1979).[2]

Failing to grasp the relevance of the proffer, the trial judge was more concerned over trying a "collateral matter," even though there was no exploration of what the scope of questioning on the matter would need to be. The majority supplies its own rationale for the trial judge's concern about trying collateral matters, stating that if the cross-examination had been allowed, the government would have had the right to rehabilitate Goodwine "by attempting to show that his comments about Coles were accurate and justified and did not reflect bias" against Coles. See *ante* at 491. This confuses impeachment with proof of untrue statements with impeachment for bias. Where impeachment is for bias, it makes absolutely no difference whether Coles's action against his former employer genuinely undermined the morale of Goodwine's fellow workers. In evaluating the possibility of bias, it is the witness's "subjective belief" which is central to the issue, "since it is this belief that can produce bias." *Scull,* 564 A.2d at 1165. Thus, the only pertinent consideration was whether, at the time Goodwine gave his testimony, he subjectively thought Coles had harmed his work unit, regardless of whether Goodwine was justified in feeling that way. No doubt the government would have had a right to probe the depth of Goodwine's resentment against Coles, as in every case in which bias is raised. But there is no record basis for the majority's concern that cross-examination for bias would have diverted the jury's attention into the merits of the employment discrimination claim, or its actual effect on Goodwine's work unit.

The majority also justifies the trial judge's exclusion of cross-examination on the ground that "allegations of unlawful discrimination tend to capture one's attention, and the proposed cross-examination would have had a significant potential for distracting of the jury." See *ante* at 491. Even assuming this is so, it would not be a

2. The majority seems to think that the "age" (five years) of the gun sale to which Goodwine testified somehow attests to its veracity, the implication being that if Goodwine had really wanted to frame appellant, he would have fabricated a more recent gun sale. See *ante* at note 7. Even a lying witness must have some regard for the crime charged, however. The armed robbery in question took place in July 1997. The first trial, where the jury could not agree on the armed robbery and PFCV charges, was held in 1999. The second trial, at which Goodwine testified, was held in October 2000, more than three years after the armed robbery. For the sale of the gun to be relevant, it had to have preceded the 1997 armed robbery. As noted, Goodwine could not specify the date of the sale; he merely testified that it was in "1994–1995."

sufficient reason to preclude bias cross-examination altogether (as opposed to reasonably limiting the government's re-direct). I note that it is precisely because allegations of discrimination are noteworthy that it is reasonable to think that the jury could well have believed, as counsel proffered, that Coles's discrimination lawsuit captured the attention of Goodwine and his fellow workers.

In sum, the proffer of bias in this case was sufficient to require the trial court, absent a showing of serious prejudice, to allow cross-examination on the issue of Goodwine's documented resentment towards Coles. An exercise of judicial discretion, however broad, will be reversed if it "appears that it was exercised on grounds, or for reasons, clearly untenable or to an extent clearly unreasonable." *Johnson,* 398 A.2d at 363 (quoting *Bringhurst v. Harkins,* 122 A. 783, 787 (Del. 1923)). I thus conclude that the trial court erred in excluding the bias cross-examination of Kurt Goodwine.

## II. Prejudice

Whether that error warranted reversal of appellant's conviction "depend[s] upon the scope of cross-examination permitted by the trial court measured against our assessment of the appropriate degree of cross-examination necessitated by the subject matter thereof as well as other circumstances that prevailed at trial." *Flores v. United States,* 698 A.2d 474, 479 (D.C.1997) (quoting *Springer,* 388 A.2d at 856). If the issue on cross-examination is merely collateral, or where ample cross-examination has already been allowed on a particular issue, curtailment of cross-examination does not implicate the Sixth Amendment, and we apply the less stringent "harmless error" test set forth in *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). The Confrontation Clause is violated, how-ever, and we apply the constitutional harmless error test of *Chapman v. California,* 386 U.S. 18, 22–2, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), whenever "the trial court precludes 'a meaningful degree of cross-examination' to establish bias." *Grayton v. United States,* 745 A.2d 274, 279 (D.C.2000) (quoting *Flores,* 698 A.2d at 479).

In this case, even though defense counsel was able to ask about the lack of documentary evidence of Goodwine's sale of the gun to appellant and Goodwine's inability to recall the year of the sale or price at which he sold the gun—deficiencies which the jury could easily dismiss as unimportant details—the trial court's ruling prohibited defense counsel from exposing Goodwine's bias and motive to lie. Thus, an entirely separate line of relevant questioning was precluded, depriving appellant of a "meaningful degree of cross-examination." *See id.; Flores,* 698 A.2d at 479; *Scull,* 564 A.2d at 1164. Therefore, in order to affirm Coles's conviction, I would have to conclude that the trial court's error in limiting the cross-examination of Goodwine for bias was nonetheless harmless beyond a reasonable doubt. *See Chapman,* 386 U.S. at 22–24, 87 S.Ct. 824. This I cannot do, as under the *Chapman* standard it must be clear that Coles would have been convicted without Goodwine's testimony. *See Flores,* 698 A.2d 474, 480–81; *Scull,* 564 A.2d at 1166.

The government's case against Coles for armed robbery was problematic, to say the least. Notably, the officers of the Metropolitan Police Department who testified against Coles were impeached with numerous inconsistencies in their prior statements and obvious variations in their accounts of the events surrounding Coles's apprehension and arrest. For instance, the only officer who was able to directly connect Coles to the weapon produced at

trial first testified that he had gotten a good look at appellant's "whole face" for about two or three seconds while chasing him. On cross-examination, however, the officer was impeached by a tape recording of a radio call made to a police dispatcher shortly after the recovery of the gun in which he stated that he had been able to see the suspect only from the rear. Similarly, Abderrafe, the victim of the robbery who positively identified appellant at trial as one of the men who robbed him, admitted that he made on-scene identifications of both Coles and the second man alleged to have been involved in the robbery primarily because police officers had told him that they thought the two men were the culprits. An officer testified that there were two men close to the place where the robbery took place who were observed by police wearing the camouflage pants the victim described were worn by one of the robbers.[3] There was no physical evidence tying Coles to the armed robbery. When the government tried appellant the first time with this evidence, it was unsuccessful in securing a conviction on the armed robbery or PFCV charge. On retrial, where the only additional evidence brought against Coles was Goodwine's testimony that he had sold the gun used in the armed robbery to Coles, a conviction was secured. Defense counsel's efforts in closing argument to impeach Goodwine's testimony about his sale of the gun to appellant, questioning his recall from memory of the serial number of a gun he had sold several years earlier, would have been greatly strengthened if he had been able to show that Goodwine was ill-disposed against appellant and possibly partial to the government and—the jury could infer—motivated to say with certainty that the gun used in the robbery was the same weapon he had

sold to Coles five years earlier. In light of the first jury's doubt and my evaluation of weaknesses in the government's case, I cannot say, beyond a reasonable doubt, that appellant would have been convicted even if Goodwine's testimony had not been believed by the jury. *See United States v. Williams,* 341 U.S.App. D.C. 281, 287 n. 10, 212 F.3d 1305, 1311 n. 10 (2000) (cautioning against "assigning critical significance to the failure of a different jury, which heard different evidence and argument, to reach agreement").

I would reverse Coles's conviction and remand the case for a new trial.

---

**3.** That officer was impeached with a call made on the night of the robbery in which he

mentioned only one man wearing camouflage pants.